K S Mc Clelland
P.O.Box 484
Yolo, CS 95697
(530) 315-5535
In. Pro Per
Ingela V. Kaersvang
13250 County Road 99B
Woodland, CA 95695
(530) 666-7244
In Pro Per

## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

In re:

Aegis Mortgage Corporation, et al.

       Debtors

) Chapter 11
) **HEARING: May 18, 2009, Ct. Rm. 1, at 2:30 p.m.**
) Case No. 07-11119 (BLS)
) (Jointly Administered)
) DCN: KSM/IVK -1

## CLAIMANTS' OPPOSITION TO DEBTORS' FIFTH (SUBSTANTIVE) OMINBUS OBJECTION TO CLAIMS

### I.
### SPECIAL FILING

Claimants K S Mc Clelland, and Ingela V. Kaersvang make this filing as a Special Filing/ Appearance as neither is sure the Court is the Court of Jurisdiction in this matter, and each Claimant wished to protect their right protect their interest without waiving their right to Jurisdictional Determination.

### II.

### CLAIMANT OBJECTS TO AND OPPOSES DEBTORS FIFTH (SUBSTANTIVE) OMNIBUS OBJECTIONS TO CLAIMS FOR THE FOLLOWING REASONS:

### A.

### The Claim Filed by the Debtors in the Claimant's was Not Filed by Claimants

Claimants, neither individually nor together, filed a claim as reported, reflected or filed by the Debtors Aegis Lending Corporation and Aegis Mortgage Corporation as Claim Number 1687 (See Debtors' Exhibit B, page 2). Debtors have not accurately presented or filed Claimants claim. Claimants' claim is contained in the attached claim documents. They are Dated today's date as the Debtor has our original claim and has misrepresented it in their filing. Furthermore, Claimants have not been able to get a copy of the filed claim because it is not available through

Pacer and Debtors have not sent Claimants a copy of their claim. That makes writing this Object/Opposition to Debtors Omnibus Objection a difficult process. Claimants will also file a separate document requesting a continuance for filing a full objection.

**B.**

## Announcement of Objection/Opposition to Debtors' Omnibus Objection
### To Claims

Claimants K S Mc Clelland, and Ingela V. Kaersvang object to and oppose the Debtors' Fifth (Substantive) Omnibus Objections to Claims and also particularly as to Debtors' presentation of, and objection to, Exhibit B, page 2, Claim Number 1687, Claimant Name and Address: Mc Clelland, K S, P.O. Box 484, Yolo, CA 95697; Claimed Unsecured Amount: $0.00; Remaining Total Claim Amount: $0.00.

Claimants also object to and oppose the Debtors' "Reason For Proposed Modification" that the Debtor gives as, "No basis per Bankruptcy Code or per the Debtors' books and records for the amount and priority sought. Debtors do not believe that any legal basis exists to establish their liability with respect to allegations as set forth in the claim."

**C.**

## The Debtors Claim There Is No Basis Per The Bankruptcy Code For The Claimants Claim Is A False Statement Meant To Mislead The Court.

This is a case involving a contract and contract cases must be decided according to the substantive law of where the contract was formed.

In making determination as to extent of claim to be allowed, bankruptcy court must go beyond this title to substantive law governing claim. *Lindermuth v. Myers* D.S.D. 1988, 84 B.R. 164.

State substantive law is applied to determine existence and validity of claim, unless this title provides otherwise. *In re Jones* Bkrtcy. C.D. Cal1987, 72 B.R. 25

The law of the place where a contract is made governs all questions concerning its validity and the capacity of the parties. *Mercantile Acceptance Co. v. Frank* (1928) 265 P. 190, 203 C. 483

The Subject Contract/Loan was signed in California. The originator, Aegis Lending Corporation, had its office in Sacramento, California. The loan originator and its parent (and

sole owner) corporation, Aegis Mortgage Corporation, were both licensed by the State of California to operate in the State of California (but only in accordance with their license and it's restrictions). The Debtor resides California. The property that was the security of the Subject Contract/Loan is in California.

Furthermore, Aegis Lending Corporation, Aegis Mortgage Corporation and Ocwen Loan Servicing, LLC., all agreed to follow and to submit to California law as part of their licensing application, Execution Page, "In the event of the issuance of a license, applicant agrees to comply with the requirements of the California Residential Mortgage Lending Act, and rules adopted, and orders issued, by the Commissioner of Corporations.." and, "WHEREFORE, applicant requests that a license be issued by the Commissioner of Corporations authorizing the applicant to engage in business under the California Residential Mortgage Lending Act within the State of California." Generally, a party having a right may waive that right. Whatever conflicting federal rights the Aegis Corporations and Ocwen had, they specifically and voluntarily waived by agreeing to abide by the law of California within the State of California.

California had subject matter jurisdiction, personal jurisdiction and the creditors have voluntarily submitted to the jurisdiction of California by way of their application and operation in California.

Clearly California law is the substantive law that governs and should be applied to this case. When we get to discussing the law in this case, it will be applicable California law, per the Bankruptcy Code.

**D.**

**Debtor Claims There Is No Basis For The Claimants' Claim Per, "Debtors' Books And Records" Is A False And Misleading Statement.**

**February 04, 2005** was the formation, signing, of Subject Contract/Loan between claimants and Aegis Lending Corporation. Claimants are not stating that they agree the formation was lawful, it wasn't, merely that it was signed as Aegis Lending Corporation contract number 010105534202.

**February , 2005** was the date that Aegis Lending Corporation recorded the Subject Contract /loan with the Yolo County Clerk's Office, Woodland, California (Document #: 2005- Exhibit No. 1 [Ex 1, hereafter].

**April 01, 2005** was the date that Aegis Lending Corporation assigned Subject contract/Loan to Aegis Mortgage Corporation that gave it Account # 400092433.

How can the Debtors' claim that there is no reason in the Debtors books or records when the Debtors recorded the Subject Contract/Loan with the Yolo County Recorder's Office, and when Aegis Lending Corporation and Aegis Mortgage Corporation each gave the Subject Contract/Loan their own control (contract/account) numbers?

Furthermore, as will be discussed later in this filing, the Subject Contract/Loan was rescinded, and was an illegal and unlawful contract that could not be enforced against the Claimants. Both the rescission and the unlawfulness of the contract are based on the Subject Contract/Loan that was conceived, formed by and recorded by the Debtors, which makes their claim that there is no basis in their books or records either a lie, or the Debtors have sold the Subject Contract/Loan in violation of the new encumbrancer prohibition of C.C.C § 1695.14(c), and fraudulently sold an unlawful contract. Either way, the Debtors Proposed modification or relief sought concerning the Claimants' claim, should be denied.

## E.

### The Subject Contract/Loan is Unlawful

### And Cannot Be Enforced Against Claimants

#### Law

**C.C.C. "§ 1667 Unlawfulness defined.**

WHAT IS UNLAWFUL. That is not lawful which is:

1. Contrary to an express provision of a law;

2. Contrary to the policy of express law, though not expressly prohibited; or

3. Otherwise contrary to good morals."

#### Applicable Case Law

When the Court discovers facts indicating the Contract sued upon is illegal, it will, of its own motion, instigate inquiry. *Morey v. Paladini* (1922) 203 P. 760, 187 C. 727.

Invalidity of contract because of malum per se or malum prohibitum may be set up at any time as defense to actions thereon for its enforcement. *Stevens v. Boyes Hot Springs Co.* (1931) 298 P. 508, 113 C.A. 479.

Contract malum per se or mala prohibitum cannot be enforced. *Stevens v. Boyes Hot Springs Co.* (1931) 298 P. 508, 113 C.A. 479.

There is no requirement that a contract violate express mandate of statute before it may be declared void as contrary to public policy. *Altschul v. Sayble*(1978) 147 Cal. Rptr. 716, 83 C.A.3d 153

Under California Law, a party may prevent the formation of a contract which includes unconscionable provisions by enjoying the inclusion of that provision in the contract. *Ting v. AT&T* N.D.Cal 2002, 182 F.Supp.2d 902, Affirmed in part (the above and applicable part) reversed in part (inapplicable to case in chief) 319 F.3d 1126, certiorari denied 124 S.Ct. 53, 540 U.S. 811.

**Brief Discussion of Law**

The substantive law in this case is the law of the State of California and from the very beginning, actually from before the beginning of a contract/loan California has laws designed to protect the borrower and if those laws are not complied with then the contract, or the Subject Contract/Loan in this case, is unlawful. In this case the conduct of the Debtors that created and serviced the Subject Contract/Loan violated numerous statutory requirements, was contrary to policy of express law, and was also contrary to good morals, good faith and fair dealing.

Also, the standard is that a contract is unlawful if it is contrary to a provision of law. "A provision of law" means that the contract is unlawful if it violates <u>one</u> section of law. If it is contrary to the policy of a law, of <u>one</u> law, it is an unlawful contract. If it is contrary to good morals; if it violates <u>one</u> standard of good moral conduct, it is an unlawful contract.

In this case the contract is unlawful. It is unlawful for each violation a provision of law, for each violation of policy of law, and for each breach of good morals, and in this case there are many separate violations of provisions of law, of policy of law, and of good morals. NOT every violation of law; Not every violation of policy of law; and Not every violation of good morals must be proven for the Subject Contract/Loan to be unlawful and therefore unenforceable against the Claimant. ONLY ONE violation of law; **OR** ONLY ONE violation of policy of law; **OR** ONLY ONE violation of good morals needs to exist for the Subject Contract/Loan to be unlawful.

## E.1.

### -Unlawful Conduct by Aegis Lending Corporation and Aegis Mortgage Corporation-

### FIRST: No Contract Shall Be Made Unless The Borrower Had Been Given A Consumer Caution And Home Owner Counseling Notice

### LAW

**C.F.C. § 4973(k)(1)Notice to Customer.**
"A covered loan shall not be made unless the following disclosure, written in 12-point font or larger, has been provided to the consumer no later than three business days prior to the signing of the loan documents of the transaction: Consumer Caution and Home Ownership Counseling Notice."

### Argument: Unlawful Contract Made Without Home Owner Counseling Notice

California Finance Code (C.F.C., hereafter) § 4973(k)(1) states that a loan shall not be made WITHOUT providing the required CONSUMER CAUTION AND HOME OWNER COUNSELING NOTICE. No such notice was given to Claimants by either Aegis Lending Corporation, the Subject Contract/Loan's originator, nor Aegis Mortgage Corporation, that is the sole owner and parent corporation of Aegis Lending Corporation. Since no notice was given to Claimant no contract/loan could legally have, and it should not have been, created. Creating a the Subject Contract/Loan without giving the notice required by C.F.C. § 4973(k)(1) is contrary to a law, and contrary to the policy of a law to protect the consumer, the borrower, and makes the Subject Contract/Loan an unlawful contract. Because, according to the statute (C.F.C. § 4973(k)(1), the contract should not have been formed; The entire Subject Contract/Loan is unlawful and void (Per C.C.C. § 1667).

## E.2.

### SECOND:  No Contract Shall Be Made Unless Borrower Can Make The Payments.

**C.F.C. § 4973(f)(1) Ability to Make Payments**
"A person who originates covered loans shall not make or arrange a covered loan unless at the time the loan is consummated, the person responsibly believes the consumer, or consumers, when considered collectively in the case of multiple consumers, will be able to make the scheduled payments to repay the obligation based upon consideration of their current and expected income, current obligations, employment status, and other financial resources, other than the consumer's equity in the dwelling that secures the repayment of the loan."

### Argument: Unlawful Contract Based Upon Equity Not Borrower's Ability to Make Payments

The Subject Contract/Loan was made by Aegis Lending Corporation with the knowledge and assistance of Aegis Mortgage Corporation (See "Relationship of Aegis Corporations Page15

Lines 1-21) without there ever being a loan application being taken from, made or signed by the Claimant Mc Clelland and the Claimant is a signer and borrower of the Subject Contract/Loan. How can the lender know borrower/Claimant can "make the scheduled payments to repay the obligation based upon consideration of their current and expected income, current obligations, employment status, and other financial resources, other than the consumer's equity in the dwelling that secures the repayment of the loan", without an application from the borrower, the Claimant in this case?

The Lender, the Aegis Corporations, did not take an application form the other borrower, either. Neither of us ever saw or filled out any application for the loan. The Broker, that worked for Aegis Corps (Aegis Lending Corporation's Brokers were administered by Aegis Mortgage Corporation, did produce an application for the other borrower to sign at the time of the signing, but it was produced and completed by the Broker NOT the borrower; without the knowledge or participation of either borrower. Still, it could not have been an application for the loan as the loan was granted and the Subject Contract/Loan signed at the same time as the "application".    For a Contract/Loan to be based upon an application, the application would have to be:

1. Filled out by the borrowers/Claimants –Which it wasn't; and

2. The application would have to be taken back to the lender and the lender's underwriter to be analyzed and would be approved or denied on the basis of that analysis of the application – Which didn't happen in this case!

A loan isn't based on an application if the application and the loan are signed at the same time, or if the borrower, or the Claimant, did not fill out an application. For a loan application and a contract/loan to be signed at the same time it would mean that the loan had already been approved, how else could the contract/loan be ready for signature? In such a case, in this case, considering that fact, and the facts that the Broker prepared loan application was only for one of the borrowers/Claimants; that there was no application from the Claimant; and that neither Claimant or other Borrower/Claimant ever saw or completed any application, it is pretty clear that the loan wasn't granted on the basis of an application and or on financial information of the Borrowers/Claimants.

The Subject Contract/Loan was made without any application in an apparent violation of C.F.C. § 4973(F)(1). Making a contract/loan without an application certainly deprives the lender of a unified complete source for the required information and it also denies subsequent encumbrancers or assignees of critical information. Making the Subject Contract/Loan without having the information required in C.F.C. § 4973(f)(1) is making a contract contrary to the provisions of law and contrary to the policy of the law, and such a contract is, and would be, an unlawful contract, and the Subject Contract/Loan IS unlawful (per C.C.C. § 1667).

The lender stated they "could make the loan" until after it got the real estate appraisal showing that there was equity of 240% of the amount of the requested ($230.000) loan. Once the lender knew the value of the property ($815,000) and that there was equity AFTER THE LOAN would equal to 2.4 times the requested loan, the lender said they <u>WOULD</u> make the loan because of the equity in the property. This was said without an application having been made and only having a real estate appraisal. The loan was made on the bases of the equity in the property, not on an application by the Claimants or anyone else. Making a contract/loan based upon the real estate appraisal and the equity in the property is contrary to an express provision of a law (C.F.C.§ 4973(f)(1); and is contrary to the policy of express law which makes the Subject Contract/Loan unlawful (per C.C.C. § 1667 subsections 1 and 2).

Because it is statutorily prohibited to form a contract in violation of C.F.C. § 4973(f)(1), A contract formed, made, created in violation of that statute, as the Subject Contract/Law was, is an unlawful contract (per C.C.C. § 1667) and the entire Subject Contract/Loan is unlawful, because none of the contract/loan should have been made, created or formed.

### E.3.

### THIRD: Knowingly or Willfully Originating a Loan as a Stated Income Loan With the Intent or Effect of Evading Provisions of Law

**C.F.C. § 4973(f)(3)Stated Income - Evading Provisions.**
"In the case of a stated income loan, the reasonable belief requirement in paragraph (1) shall apply, however, for stated income loans that may be based upon the income stated by the customer, and other information in the possession of the person originating the loan after the solicitation of all information that the person customarily solicits in connection with loan of this type. A person shall not knowingly or willfully originate a covered loan as a stated income loan with the intent, or effect, of evading the provisions of this subdivision."

## Argument: Willfully Evading Provisions of Law

The Subject Contract Loan was written as a "Stated Income" loan with no information to support the stated income. As stated above, neither Claimant filled out or even saw an application for the Subject Contract/Loan. An "application" was never seen by the borrowers/ Claimants until the signing of the Subject Contract/Loan and that "application" was prepared by the Broker without the knowledge or participation of Claimants or either borrower, and that "application" was only for the other borrower/Claimant---not the Claimant Mc Clelland.

The broker had completed the "loan application" as a stated income application using income amounts not related to any information provided by the Claimants/borrower and not including any expenses. Even though the Debtor submitted a business plan, an income and expenses statement, none of that information was used in any application or in any way concerning the Subject Contract/Loan. That being the case, and the fact that the Subject Contract/Loan states that it is a Stated Income Loan, clearly demonstrates that the sole purpose of using a Stated Income "application" was to evade the provisions of C.F.C. § 4973(f)(3) that require a reasonable belief that the borrower can make the scheduled payments. Without detailed applications from both Claimants/borrowers there is no basis to have a reasonable belief that the Claimants/borrowers, could make the scheduled payments. There can be no reasonable belief that a Claimant, or even both Claimants/borrowers, could make the payments scheduled in the Subject Contract/Loan.

By the way, the payments were greatly increased above the agreed to amount without the knowledge of the Claimants, or borrowers. This will be discussed under Taking Unconscionable Advantage of Property Owners with Property in Foreclosure, a predatory lending practice. For now, it is sufficient to say that the purpose of using a stated income "application" concocted by the broker was specifically to evade the limitations and the requirements of C.F.C. § 4973(f)(3), which makes the Subject Contract/Loan an unlawful contract. Because no contract should have originated in violation of C.F.C. § 4973(f)(3), a contract originated and formed in violation Of C.F.C. § 4973(f)(3) is unlawful (per C.C.C. § 1667) and the entire contract, and any of part of it, is unlawful.

**FOURTH: Aegis Lending Corporation And Aegis Mortgage Corporation Violated C.F.C. § 50204(F)**
**By Intentionally Delaying Presentation And Closing Of The Subject Contract/Loan - To The Detriment Of The Complainants**
**And**
**Violated C.F.C. § 50204(M) And C.C.C. § 1695.13 By Taking Unconscionable Advantage Of Property Owners With Property In Foreclosure.**

**LAW**
(*Italicized bold* added for emphasis)

**C.F.C. §"50204. Prohibited acts.** A licensee[1] *may not* do any of the following:
(f) Intentionally delay closing of a mortgage loan for the sole purpose of increasing interest, costs, fees, or charges payable by the borrower." ...
(m) Commit an act in violation of Section 1695.13 of the Civil Code.

**C.C.C.§ 1695.13. Prohibited acts.** "*It is unlawful for any person to* initiate, enter into, negotiate, or consummate any transaction involving residential real property in foreclosure, as defined in C.C.C. § 1695.1(b), if such person, by the terms of such transaction, takes unconscionable advantage or the property owner in foreclosure."

**C.F.C. § 4973. Prohibited Acts.** The following are *prohibited acts* and limitations for covered loans:
(a) (1) A covered loan *shall not include* a prepayment fee or penalty after the first 36 months after the date of consummation of the loan.
(2) A covered *loan* may include a prepayment fee or penalty up to the first 36 months after the date of consummation of the loan *if:*
(A) The person who originates the covered loan has also offered the consumer a choice of another product without a prepayment fee or penalty.
(B) The person who originates the covered loan has disclosed in writing to the consumer at least three business days prior to loan consummation the terms of the prepayment fee or penalty to the consumer for accepting a covered loan with the prepayment penalty and the rates, points, and fees that would be available to the consumer for accepting a covered loan without a prepayment penalty.

**C.F.C. § 4979.6 Excessive Fees.**

---

[1] A licensee is a corporation that is licensed by the California Department of Corporations under the California Residential Mortgage Lenders Act. (CRMLA)

"A person who originates a covered loan *shall not make* a covered loan that finances points and fees in excess of one thousand dollars ($1,000) or 6% (percent) of the original Capitol balance, exclusive of points or fees, whichever is greater."

**C.F.C. §"50204 Prohibited acts**
A licensee *may not* do any of the following:...
(g) Engaged in fraudulent home mortgage underwriting practices;...
(j) Knowingly misrepresent, circumvent, or conceal, through subterfuge or device, any material aspect or information regarding a transaction to which it is a party;
(k) Do an act, whether of the same or a different character than specified in this section, that constitutes fraud or dishonest dealings."

**Argument: Intentional Delay to Borrower's Detriment**
**And**
**Taking Unconscionable Advantage of Borrowers in Foreclosure**

The Aegis Lending Corporation did not deliver the Subject Contract/Loan to the Claimant until 7:00 p.m. February 4th 2005, although the documents had been promised weeks earlier, but just were never ready until the last moment that they could be signed and the disbursement made in time to prevent the foreclosure sale.

The Claimants had offered go to the Aegis Lending Corporation's office in Sacramento to sign the documents, but Aegis Lending Corporation told the Claimants that the Broker would take the documents to them and would not let the Claimants sign the Subject Contract/Loan in the Debtor's office.

When the Broker did finally arrive at 7:00 p.m., he was given a tour of the farm and its operation was explained to him.

The Broker was impatient and rushed though the signing, deriding the Claimant and property co-owner when they wanted to read the Subject Contract/ Loan page by page and when they had questions. He, the Broker, even said he leave if they didn't hurry-up. He said he had another signing to go too and that he didn't want to lose it. The Claimants and property co-owners understood that if he left, there would be no loan and the farm would be sold in foreclosure. That was understood, but the Broker reminded the Claimants anyway.

The Claimants had questions about why the amount of the monthly payment had increased by $533.34 (from $1800 to $2233.34) without the knowledge or agreement of the Claimants: The answer was, "Because the property is in foreclosure."

The Claimants had questions about why the "Prepayment Penalty" had increased from one year to two years without the Claimants' knowledge or agreement. The Broker's answer, "Because the property is in foreclosure." Also, the Claimants were never offered the advantage of a contract/loan without a prepayment penalty, which is a violation of C.F.C. § 4973 (a)(2)(A), and (a)(2)(B). Had that offer been made, Claimants would have taken it and then could have taken Uncle Ted's offer and paid off the Subject Contract/Loan which would have saved Claimant the substantial increases in interest rates and would have quite significantly reduced Claimants' monthly payment (form $2,233 per month to $1,498.84, a savings of $734.16 per month).

Violating C.F.C. §4973 is "Contrary to a provision of law" and in accordance with C.C.C. § 1667 the Subject Contract/Loan is unlawful.

The Claimants had a lot of questions about the meaning of words, phrases, abbreviations, and instructions. None of those questions was answered by the Broker, and they haven't been answered by Aegis Lending Corporation, Aegis Mortgage Corporation or Ocwen Loan Servicing to this date. The Debtor and property co-owner STILL do not know what those words, phrases, abbreviations, and instructions mean.

Which brings up some good questions: How can there be a contract formed when the words, phrases, abbreviations, and instructions are not understood by the signers? How can there be a contract when there wasn't a meeting-of-the-minds? How can there be an agreement when the Claimants do not know what was "agreed" to?

When the Claimants wanted to have the Subject Contract/ Loan rewritten to correct the errors, to make it comply with what they had agreed to, they were told no changes would be made by the lender; that they couldn't be made before the foreclosure sale that was just days away. The Claimants were told they had to take it or leave it, that no changes would be made

in the contract and that if they (the signers/borrowers) didn't sign the contract as it was that there would be no loan and they would lose their farm.

The Lender, Licensees Aegis Lending Corporation, with Aegis Mortgage Corporations knowledge and assistance forced an adhesion contract on Debtor.

During the signing of the Subject Contract/Loan the signers/Claimants, learned for the first time that there were substantial and material differences between that to which they had agreed and what was in the Subject Contract/Loan.

Those substantial and material differences included:

1. **Huge increase in total amount due.** The loan amount was $286,200.00, quite a difference than the $230,000.00 the Claimants had requested. In fact the Claimants/borrowers did not know the loan was for $286,200.00 until the signing of the Subject Contract/ Loan;

2. **Lender Charged Excessive Fees.** CFC § 4979.6 states that the lender/loan originator may not charge more than 6% of the original loan, excluding closing costs, points, and fees (that are over $19,337 in the case of the Subject Contract/Loan) in closing cost, points and fees." The Subject Contract/Loan was for $286,644.17. Subtract the closing costs, points and fees ($19,337.94) and that leaves $267,306.23. Six percent (6%) of $267,306.17 is $16,038.37 The "Loan Discount" for Aegis Lending Corporation is $18,240 and that "fee" itself is more that the permissible 6% ($2,201.63 above the maximum of 6%). Total Costs and fees come to over $19,337.94 or 7.23437%. The licensees/lenders/creditors violated CFC § 4979.6 by charging 120.57% of the maximum allowed.

3. **Aegis Corporations Committed Fraud and Dishonest Practices.** The "loan Discount" in 2., immediately above, was explained to Claimants, and was listed as, a "loan discount", a savings in the borrowers' (Claimants') pockets; a discount given to the Claimants. It was money being saved by the borrowers/Claimants. It was not until much later, after the Subject Contract/Loan was signed, that Claimants learned that the "Loan Discount" was actually money paid by the Claimants to the Lender AND NOT money saved, money in the Claimants' pockets. It was paid out the money that

was suppose to go to the Claimant - part of the $30,000 that the Claimants wanted for the farm business (to purchase equipment, buy supplies, to make repairs and to improve the farm's facilities and operation). Debtors fraud and dishonest practices violated C.F.C. § 50204 (g), (j), and(k).

4. **Quite substantial Increase n percentage rate.** The APR was 10.746% according to the Truth In Lending Disclosure Statement, Aegis Lending Corporation, Loan 010105534202, Data ID: 439, page 1 of 2 – not the 6.25 to 6.8% the Broker had initially said the loan would be, or even the 8% he said it had gone up to, "Because the property is in foreclosure." In fact, according to the Adjusted Rate Note, page 2 of 5, the interest rate can go as high as 14.6610%. An increase of over 6% over what the Broker had said the loan rate would be. An increase the Broker said was, "Because the property is in foreclosure."

5. **Interest charged before first payment was due.** Broker, on behalf of Aegis Lending Corporation, stated that there would be no interest until after the first payment was made. Long AFTER the signing of the documents the Claimants/Borrowers learned that $1,351.82 in interest was charged, and paid - as part of the "Closing cost" – for the time between the signing of the Subject Contract/Loan and the first payment due. The Claimants did not know of this material change until the signing of the Subject Contract/Loan.

6. **Monster increase in monthly payment.** The monthly payment was $2,233.37, not the initial $1,200 to $1,400 the Broker had said the monthly payment would be when the Claimant was considering getting a private party loan with a $1,200 monthly payment, or even the $1,600 to $1,800 , "Because the property is in foreclosure." That is an increase of $433.37over the highest monthly payment amount that had been mentioned. Neither Claimant ever agreed to a monthly payment of $2,233.37, it just showed up in the Subject Contract/Loan and when asked about the increase the Claimants were told it was, "Because the property is in foreclosure."

7. **Payment to Borrowers reduced by 89%.** At the time of the signing of the Subject Contract/Loan the Claimants/borrowers learned that they would not be getting the $30,000 that had been requested and that was to be used for improving the farm, buying supplies, and making repairs to the farm as part of the Business Plan, but that

they would be receiving only $3,355.83 (11.18% of what was requested and expected).

8. **Incredible increase in benefits to lender and depressing reduction in "benefit" to Claimants/Borrowers.** From inception to signing the monthly payment went up 86.11% and the benefit to the Claimants/Borrowers went down 88.82% ($30,000 down to $3,355.83), and the Claimant/Borrowers had to sign and the Subject Contract/Loan or lose the farm to foreclosure because the Aegis Lending Corporation and Aegis Mortgage Corporation had delayed the closing until a time when the Claimants would not have any other loan source available and a time when no changes could be made in the Subject Contract/loan, which was not the contract/loan the Claimants had agreed too.

9. **Intentional delay by lender for lender's benefit.** Aegis Lending Corporation, Aegis Mortgage Corporation and the Broker purposely delayed the signing and closing of Subject Contract/Loan so they could INCREASE the monthly payment amount, INCREASE the prepayment penalty period, INCREASE the interest rates, INCREASE the total debt owed by the Claimants - WHILE REDUCING the amount to be paid to the Claimants, and taking unconscionable advantage of the Claimants/Borrowers, that had property in foreclosure –forcing the Claimants/Borrowers, take the materially changed Subject Contract/Loan "as is" or lose the farm, their property, to imminent foreclosure sale.

Creditors Aegis Lending Corporation and Aegis Mortgage Corporation intentionally manipulated and delayed the timing of the production and/or presentation of the Subject Contract/Loan until the very last moment that would permit a distribution of funds to stop the scheduled foreclosure on the Claimants' property, when there would be no time of any rewriting or changes to be made in the Subject Contract/Loan and then presented the Subject Contract Loan with major material differences about which the Claimants/Borrowers knew nothing, had not previously agreed to, and did not know were in the Subject Contract/Loan until the time of the signing. All the changes in the Subject Contract/Loan were withheld from the Claimants/Borrowers and were included by the lender without informing the Claimants/Borrowers and all the changes favored the lender and all meant more income for the lender and higher costs and less return/benefit to the Claimants/Borrowers. Lender, Aegis

Lending Corporation, with the knowledge and participation of Aegis Mortgage Corporation (see foot Note # 5, page 6 of this motion) both of which were licensees of the California Department of Corporation under the California Residential Mortgage Lenders Act and both violated **C.F.C. §"50204. Prohibited acts. Subsection (f)** by, "intentionally delay closing of a mortgage loan for the sole purpose of increasing interest, costs, fees, or charges payable by the borrower."

Violating C.F.C. § 50204(f) in forming the Subject Contract/Loan is "Contrary to an express provision of law", is "Contrary to the policy of express law" and is "Contrary to good morals" subsections of C.C.C.§ 1667 which makes the Subject Contract/Loan an unlawful contract.

All of the changes in the Subject Contract/Loan were made, according to the Broker, "Because the Property is in foreclosure", and all of the changes benefited the Lender. The Lender and its Broker refused to make any changes to the Subject Contract/Loan when it was presented to the Claimants /Borrowers, and the Claimants (the property owners)/ Borrowers, could either take the Subject Contract/Loan "as is" of they (the Aegis Lending Corporation, Aegis Mortgage Corporation, and their Broker) would let the property be sold at a foreclosure sale that the Broker, the Aegis Corps. and Claimants knew was imminent. The Aegis Corps. and their Broker knew, and the Claimants knew, that there wasn't time to get any alternative financing and stop the foreclosure sale and the Subject Contract/Loan would have to be signed right then and "as is" to stop the foreclosure sale, and yet Aegis Corps. Broker reminded the Claimants of that fact.

Aegis Lending Corporation and Aegis Mortgage Corporation initiated, entered into and consummated a transaction, the Subject Contract/Loan, involving real property in foreclosure and took unconscionable advantage of the property owners (Claimants) in foreclosure and violated C.C.C.§ 1695.13. Prohibited acts, which is "Contrary to a provision of law", is "Contrary to the policy of express law, though not expressly prohibited", and is certainly , "Contrary to good morals", which makes the Subject Contract/Loan an unlawful contract under any and all subsections of C.C.C. § 1667.

The Subject Contract/Loan is unlawful because Aegis Lending Corporation and its parent corporation and sole owner, Aegis Mortgage Corporation, working together, intentionally

delayed the closing for the benefit of the lender and its parent corporation, which is a violation of law (violated C.F.C. 50204(f). Violation of a provision of law, and violating the policy of law and also violating the "good morals" subsection of C.C.C. §1667 makes the Subject Contract/Loan unlawful.

C.F.C. § 4973 states that a licensee may not do any of the following, Subsection (f)(1) delay closing for lender's benefit, which is exactly what Aegis Lending Corporation and Aegis Mortgage Corporation did in the case of the Subject Contract/Loan. Violating C.F.C. § 4973(f)(1) makes the entire signing of the Subject Contract/Loan unlawful and makes the Subject Contract/Loan unlawful and it should not have been made.

Because Aegis Lending Corporation and Aegis Mortgage Corporation initiated, negotiated, enter into and consummated the Subject Contract/Loan with property in foreclosure and took unconscionable advantage of the Claimants in consummating the Subject Contract/Law, the Subject Contract/Loan is unlawful, and is unlawful in its entirety, and an unlawful contract cannot be enforced against the Claimants, including through foreclosure proceedings.

For the above reasons the Subject Contract/Loan is unlawful in its entirety and in its parts and the Claimants therefore demand and seek the reconveyance of the Deed of Trust that was object of the Unlawful Contract.

**III.**

**Rescission of Contract and Demand For Reconveyance Of Real Property**

On **August 04, 2006,** For all the above, and other, reasons - Claimants recorded a Notice of Rescission of Contract per California Civil Code (C.C.C., hereafter) § 1695.14 (a) and (b), Document No. 2006- , Ex 2. Per C.C.C. § 1695.14(c) there can be no bona fide encumbrancy after the recording of the Notice of Rescission of Contract. In effect that prohibition prohibits the sale, transfer or assignment of the Subject Contract/Loan to another entity or party because they could not be a bona fide purchaser or a bona fide assignee or holder in due course. If the Subject Contract/Loan were sold or assigned by the Debtor the purchaser or assignee would not be purchasing or receiving any right to enforce, or benefit by, the Subject Contract/Loan.

Since the Debtors have apparently sold the Subject Contract/Loan, the Claimants seek:

1. The value of the property ($815,000 according to the Real Estate Appraisal demanded by, and made to, the Debtors, Ex 3) be paid to Claimants so that they can protect their property form the actions of those to whom the Debtors have sold the Subject Contract/Loan;

2. That the Debtors reconvey the property and Deed of Trust to the Claimants; or

3. That the Court undo the sale, assignment or transfer of the Subject Contract/Loan and return it to the Debtors and that the Debtors reconvey the property and Deed of Trust to the Claimants.

4. As will be discussed later, the Debtor cannot profit by or enforce an unlawful contract, so reconveyance is a proper remedy.

## IV.

## DEBTORS LACK STANDING TO MAKE OBJECTION AGAINST CLAIMANTS

### A.
### Aegis Lending Corporation and Aegis Mortgage Corporation
### Are NOT Licensed to Make or Service the Subject Contract/Loan

### LAW

**CFC Sec. "50204 Prohibited acts"** states "A licensee may not do any of the following: (n) Make or service a loan that is not a residential mortgage loan under the authority of the license.

**CFC Sec. "50003 Definitions"** States – under subsection,
"(o)'Mortgage loan,' 'residential mortgage loan,' or 'home mortgage loan' <u>means a federally regulated mortgage loan as defined in Section 3500.2</u> of Title 24 Code of Federal Regulations." (24 CFR 3500.2, hereafter.)

**Section 3500.2 of Title 24 Code of Federal Regulations, states "Definitions."**
"(a) *Statutory terms.* All terms defined in RESPA (12 U.S.C. 2602) are use in accordance with their statutory meaning unless otherwise defined in paragraph (b) of this section or elsewhere in this part." (PART 3500-REAL ESTATE SETTLEMENT PROCEDURES ACT, 3500 – to 3500.21.)
"(b) *Other terms.* As used in this part:...
*"Federally related mortgage loan or mortgage loan* means as follows:
(1) Any loan (other than temporary financing, such as a construction loan):
(i) That is secured by a first or subordinate <u>lien on residential real property</u>, including a refinancing of any secured loan on residential real property upon which there is either:
(A) Located or, following settlement, will be constructed
  using proceeds of the loan, a structure or structures

designed principally for occupancy of from one
to four families (including individual units of
condominiums and cooperatives and including any
related interests, such as a share in the cooperative
or right to occupancy of the unit); or..."(End of
relevant/applicable section.)

**24 CFR "3500.5 Coverage of RESPA.**
(a) *Applicability.* RESPA and this part apply to all federally related mortgage loans, except for
the exemptions provided in paragraph (b) of this section.
(b) Exemptions.
(1) A loan on property of 25 acres or more.
(2) *Business Purpose Loans.* An extension of credit
primarily for a business commercial or agricultural purpose, as defined by Regulation Z, 12 CFR
226.3(a)(1). Persons may rely on Regulation Z in determining whether the exemption applies."

**REGULATION Z:**
Section 226.3 Exempt Transactions.
This regulation does not apply to the following:
       Business, commercial, agricultural, or organizational credit.
       An extension of credit primarily for a business, commercial or agricultural purpose.

**12 U.S.C. 2279aa.** Farm Credit System that states,
(1)"Agricultural real estate
The term 'agricultural real estate' means-
       (A)    a parcel or parcels of land, or building or
               structure affixed to the parcel or parcels, that-
       (i)     is used for the production of one or more
               agricultural commodities or products; and
       *(ii)*   consists of a minimum acreage or is used
               in producing minimum annual receipts, as determined by the
               Corporation; or
       *(B)*   a principal residence that is a single family, moderate-priced
               residential dwelling located in a rural area, excluding –
       (i)     any community having a population in
               excess 2,500 inhabitants; and
       (ii)    any dwelling, excluding the land to which the dwelling is affixed,
               with a value exceeding $100,000 (as adjusted for inflation)."

**Debtors - Aegis Lending Corporation and Aegis Mortgage Corporation;**
**Were Not Licensed To Make Or Service**
**The Subject Contract/Loan.**

## Introduction

One of the primary questions to be answered is whether Aegis Corps. were licensed to make or service the Subject Contract/Loan? Aegis Corps. (Aegis Lending Corporation and Aegis Mortgage Corporation) were licensed under the California Residential Mortgage lenders Act (California Financial Code, CFC, hereafter, Sections 50000, et seq.). That act defines what type of loan may be made by a licensee, the stated creditors in this case, by referencing federal law in the following order: 24 CFR § 3500.2, subsections (A) and (B); 24 CFR 3500.5 (A), (B) Exemptions: (1) A loan on property of 25 acres or more, (2) *Business Purpose Loans.*

## Argument

In the applicable statutes that are given above, the underlined parts are those parts of the sections that are the elements violated by the Licensees/Creditors and are the elements that demonstrate, reveal, how the Licensees/Creditors made or serviced a loan that is not a residential mortgage under the authority of the license. Let's follow the statutory trail and discover the limitation of the California Residential Mortgage Lenders Act and the licenses issued under it.

The California Residential Mortgage Lenders Act (CRMLA, hereafter), CFC § 50000 et seq. governs and limits the operation of residential mortgage lenders in California.

C.F.C. § "**50204 Prohibited acts**" states
"A licensee may not do any of the following:
(n) Make or service a loan that is not a residential mortgage loan under the authority of the license."

The California Residential Mortgage Lenders Act sets its limits by through the use of definitions and specific sections that prohibit certain misconduct.

C.F.C. § "**50003 Definitions**" States – under subsection,
"(o)'Mortgage loan,' 'residential mortgage loan,' or 'home mortgage loan' means a federally regulated mortgage loan as defined in Section 3500.2 of Title 24 Code of Federal Regulations." (24 CFR § 3500.2, hereafter.)

So, the question becomes: Was the Subject Contact/Loan a residential mortgage loan as defined in 24 CFR 3500.2?

Section 3500.2 of Title 24 Code of Federal Regulations, states "Definitions."

"(a) *Statutory terms*. All terms defined in RESPA (12 U.S.C. 2602) are use in accordance with their statutory meaning unless otherwise defined in paragraph (b) of this section or elsewhere in this part." (PART 3500-REAL ESTATE SETTLEMENT PROCEDURES ACT, 3500 – to 3500.21.)

"(b) *Other terms*. As used in this part":...

Under 24 CFR 3500.2(b) "*Other terms* as used in this part:" (Parts 3500 to 3500.21 Title 24 CFR) is 24 CFR 3500.5. that establishes limitations on what type of loans can be made under the California Residential Mortgage Lenders Act.

## Coverage of RESPA: 24 CFR "3500.5

(a) *Applicability*. RESPA and this part apply to all federally related mortgage loans, except for the exemptions provided in paragraph (b) of this section.

(b) Exemptions.

(1) A loan on property of 25 acres or more.

(2) *Business Purpose Loans.* An extension of credit primarily for a business commercial or agricultural purpose, as defined by Regulation Z, 12 CFR § 226.3(a)(1). Persons may rely on Regulation Z in determining whether the exemption applies."

24 § CFR 3500.5(b)(1) and (b) establish two restrictions for Licensees licensed by the

California Department of Corporation under the California Residential Mortgage Lenders Act

(CRMLA): **Residential Mortgage Loans may not be made**:

1 on property of 25 acres or more; or,

2. For business Purpose Loans, and 24 C.F.R. § 2500.2(b)(1) restricts a "Federally related

mortgage loan of mortgage loan" to "residential real property".

Section 3500.2 of Title 24 Code of Federal Regulations, states "Definitions."

"(a) *Statutory terms*. All terms defined in RESPA (12 U.S.C.§ 2602) are use in accordance with their statutory meaning unless otherwise defined in paragraph (b) of this section or elsewhere in this part." (PART 3500-REAL ESTATE SETTLEMENT PROCEDURES ACT, 3500 – to 3500.21.)

"(b) *Other terms*. As used in this part:...

"Federally related mortgage loan or mortgage Loan means as follows:

(1)Any loan (other than temporary financing, such as a construction loan):

That is secured by a first or subordinate lien on residential real property, including a refinancing of any secured loan on residential real property upon which there is either:...

Located or, following settlement, will be constructed using proceeds of the loan, a structure or structures designed primarily for occupancy of from one to four families(including individual units of condominiums and cooperatives and including any related interest, such as a share in the cooperative or right to occupancy of the unit)." **Bold** and underlining added by Debtor's for emphasis.

Section 3500.2 of Title 24 Code of Federal Regulations makes it clear that a "Federally related mortgage" loan must be secured by a lien on **"residential real property."** If the real property is not residential real property, then a Department of Corporations licensee (Aegis Corps., and Ocwen, in this case) cannot make or service a residential loan on the property under the California Residential Mortgage Lenders Act, and the terms of their license.

The Claimants' real property is agricultural and not residential real property, in which case a California Department of Corporations licensee (the Debtors: Aegis Lending Corporation, Aegis Mortgage Corporation) could not make, or service, a contract/loan on Debtor's property.

The federal government and federal law defines agricultural real estate as follows:

**12 USC § 2279aa Farm Credit System**, Definitions
(1)Farm Credit System that states,
"Agricultural real estate.
The term 'agricultural real estate' means-
(A)a parcel or parcels of land, or building or structure affixed to the parcel or parcels, that- is used for the production of one or more agricultural commodities or products; and consists of a minimum acreage or is used
in producing minimum annual receipts, as determined by the Corporation; or
(B)a principal residence that is a single family,
moderate-priced residential dwelling located in a rural area, excluding –
(i)any community having a population in excess 2,500 inhabitants; and
        any dwelling, excluding the land to which the dwelling is affixed, with a value exceeding $100,000 (as adjusted for inflation)."

To be a lawful contract under the California Residential Mortgage Lenders Act (CRMLA) the primary, and controlling factor is that the property that is the security of the Subject Contract/Loan – that is mortgaged because of the contract/loan, is residential property.

If the Claimants' property is 25 acres or larger, it is too big for a residential mortgage. If the Claimants' loan was for business purposes, it is not a residential loan. If the Claimants' property is not residential property, residential real estate, it is not a residential mortgage/loan. If the Claimants' property is agricultural real estate, it cannot be residential property or mortgagead for a residential loan. If the Subject Contract/Loan on Claimants' property is not a residential mortgage and loan, then it is an unlawful contract/loan under the California Residential Mortgage Lenders Act and could not lawfully be made or serviced by a licensee of

the California Department of Corporations, including by Aegis Lending Corporation and Aegis Mortgage Corporation.

The Debtors: Aegis Lending Corporation and Aegis Mortgage Corporation cannot make or service the Subject Contract/Loan if:

1.  The Debtors are not licensed to make or service the Subject Contract, Loan, which they are not, IF:

    A.  The Subject Contract/Loan is not secured by residential property;

    B.  The Subject Contract /Loan is on property to big to be residential property;

    C.  The Subject Contract/Loan is for business purposes.

The Claimants property is agricultural real estate---NOT residential property; The Debtor's property IS TOO BIG (27.18 Acres is bigger than, "Less than 25 acres") to be residential property; The Subject Contract/Loan was for business purposes: Buying supplies, equipment, making repairs and improving facilities ; which means that the Debtors (Aegis Lending Corporation and Aegis Mortgage Corporation) are not licensed to make or service the Subject Contract/Loan on the Complainants' property.

**B.**

**Debtors Cannot Make a Claim Against Claimants' Property**
**Because They are not Licensed to Make or Service Loans on Agricultural Real Estate**
**The Claimants' Property Is Agricultural Real Estate**

Claimants' property is Agricultural Real Estate, in accordance with 12 USC § 2279aa, because it is: a parcel of land with buildings or structures affixed that are

(i)Used for the production of one or more agricultural commodities or products: row crops and horse breeding; and

(ii)Consists of more than the minimum acreage AND is used in producing more than the minimum annual required receipts; AND

(B)Has the principal residence of the Claimant that is a single family that is a low-priced residential dwelling located in a rural area that;

(i)   Is zoned agricultural and the Claimants' property is zoned "Agricultural Preserve" and the nearest community is Yolo, California (95697) having a population of about 500, far less than the limit of 2,500 inhabitants; and

(ii)The Claimants' dwelling, excluding the land to which the dwelling is affixed, has a value far below the $100,000 limit (as adjusted for inflation).

In fact the real estate appraiser gave the Claimants' residence a substandard rating and gave it NO VALUE, AND the Licensee/Lender then deducted another $65,000 to make sure that no value was given to Claimants' primary residence.

The Claimants' property is Agricultural Real Estate by federal standards (Farm Credit System, 12 USC 2279aa), as discussed above, and IS NOT residential real estate or residential property.

**The Federal Government Considers the Claimants' Property to be Agricultural**

The federal government considers the Claimants' property to be agricultural and to be used for business, commercial and agricultural purposes and has granted the Claimants a Federal Tax Number for operating Kirkcudbright Farm on the property(tax number withheld for privacy and security purposes, but it was readily available to the lenders).

Through information[2] provided to the Licensees, Aegis Lending Corporation and Aegis Mortgage Corporation, by Claimants, by public records (See Ex # 7: Recorded Map and Survey showing property) , and by the Real Estate Appraisal that described the property as 27.18 acres zoned Agricultural/Agricultural Preserve (Ex. #8: Appraisal - P  L. ;  Assessor's map, book 27, page 20, property # 11, APN 027-200-11)it was made very clear to the all the Debtors that the property was, and is, agricultural real estate; is zoned Agricultural Preserve, and is Not residential property.

**The State of California Considers the Claimants' Property to be Agricultural**

By information readily available to the Licensees/lenders, through public records, through the State and through the Yolo County Recorder's Office, through the Tax Assessors Office and by the fact that the State of California recognizes and considers the

---

[2]   The Business Plan, the Income and Expense Statement, Kircudbright Farm's bank account records .

Claimants' property to be Agricultural and to be an Agricultural Preserve under the Williamson Act, California Government Code sections 51200 Et. Seq., (and taxes it as such) it obvious that the Claimants' property is agricultural and not residential property. See Ex. # 10: Williamson Act (Ag Preserve) Land Use Agreement, Yolo County Recorder's Office, Book 1180 Page 23.

**Yolo County Considers the Claimants' Property to be Agricultural**

Through information provided to the Debtors by the Claimants and by information readily available to the creditors, and as a matter of public record (per C.C.C. § 1213 the creditors have constructive knowledge of all public records –including zoning, APN 027-200-11 Ex # Ag. Preserve protection - Ex # 9; and status, and business operation on the Claimants' property – Fictitious Name Cert.: Kirkcudbright Farm, it is clear that the Claimants' property is agricultural property and NOT RESIDENTIAL PROPERTY.

Yolo County, California considers the Claimants' property to be agricultural and to be used for business, commercial and agricultural purposes because:

1. It granted the Claimants a Fictitious Name Certificate to operate and use the property as Kirkcudbright Farm (Kir-coo-bree farm);

2. The property is zoned "Agricultural/Agricultural Preserve"; and

3. It is taxed as an agricultural preserve.

By Federal law, standards, and recognition; By the State of California law, standards, and recognition; By Yolo County, California law, standards, and recognition – By real estate appraisal, and by the statements and documents provided by the Claimants to the Debtors - the Claimants' property is 27+ acres of agricultural real estate and an agricultural preserve that raises income producing crops and has a business operation on it.

For Aegis Lending Corporation or Aegis Mortgage Corporation to be permitted to make, service a contract/loan on residential real property the property the loan is made on must qualify as residential mortgage and a federally related mortgage on "residential real estate."

The Claimants' farm property does not qualify as "residential real estate" because of its size 27+ acres which exceeds the limit of the California Residential Mortgage Lenders Act and exceeds the limits of all federally related mortgage loans per 24 CFR § 3500.5(b)(1) by being "A

1 loan on property of 25 acres or more", and 24 CFR 3500.5(b)(2) the property is used for
2 commercial/ business and is income producing agricultural real estate.

3 The Claimants' property IS NOT, **IS NOT**, residential property or residential real estate.
4 It is agricultural real estate/agricultural real property. Being agricultural real estate the
5 Debtor's property cannot be used as security for, or as a lien on, "residential real property" as
6 required by Title 24 CFR 3500.2(b)(i) and the California Residential Mortgage Lenders Act. Since
7 Debtor's property is not residential and cannot be used to secure to secure a lien on
8 "residential real property" as required by the California Residential Mortgage Lender's Act, the
9 making the Subject Contract/Loan on the Claimants' property, is a violation of **C.F.C. § "50204**
10 **Prohibited acts"** that states
   **"A licensee may not do any of the following:**
11 **(n) Make or service a loan that is not a residential mortgage loan under the authority**
12 **of the license."**

13 Aegis Lending Corporation and Aegis Mortgage Corporation have each claimed to be
14 operating under the California Residential Mortgage Lenders Act and their California
15 Department of Corporations license when making and/or servicing the Subject Contract/Loan.
16 In fact it is because of false representations by Aegis Corps (ALC and AMC), including those
17 about their licensing permitting them to make a loan on the Claimants' agricultural property,
18 that Claimants entered into the Subject Contract/Loan process with Aegis Corps. Had they
19 been truthful and told Claimants they were not licensed to make a loan on Claimants' property,
20 Claimants would have taken Uncle Ted's loan. Uncle Ted may have been a persnickety micro-
21 manager, but he was dead on honest.

22 Creating and/or servicing the Subject Contract/Loan in violation of C.F.C. § 50204(n) is to
23 make or service a contract in violation of a statute and that makes the Subject Contract/Loan an
24 unlawful contract per C.C.C. § 1667. 1., (and in this case, also the policy of the law 2. -
25 protection of the public and control of lenders and servicers, and violates the good morals
26 standards of 3. by fraudulent misrepresentation of the term of their licenses).

27 It also means that the Debtors: Aegis Lending Corporation and Aegis Mortgage
28 Corporation, acted outside of their license and were not, and are not, licensed to make or

service the Subject Contract/Loan. Not being licensed to make or service the Subject Contract/Loan means that Aegis Lending Corporation and Aegis Mortgage Corporation aside from making an unlawful contract and unlawfully servicing that contract, also lack standing to make any claim against Claimants based upon that contract, the Subject Contract/Loan, because they are standing OUTSIDE of their license, OUTSIDE of the law and on an unlawful contract.

## C.

**Argument: Debtors Cannot Make a Claim Against Claimants' Property**
**Because They are not Licensed to Make or Service Loans on 25 Acres or Larger**
**and**
**Debtor's Property Is 27.18 Acres**
**-Too Large to be Residential Property-**

## LAW

CFC Sec. "50204 Prohibited acts"
"A licensee may not do any of the following:
(n) Make or service a loan that is not a residential mortgage loan under the authority of the license."

Coverage of RESPA.24 CFR "3500.5
(a) *Applicability.* RESPA and this part apply to all federally related mortgage loans, except for the exemptions provided in paragraph (b) of this section.
(b) Exemptions.
(1) A loan on property of 25 acres or more.
(2) *Business Purpose Loans.* An extension of credit primarily for a business commercial or agricultural purpose, as defined by Regulation Z, 12 CFR 226.3(a)(1). Persons may rely on Regulation Z in determining whether the exemption applies.

### Claimants' Property Is Too large To Be Residential Mortgage

According to CFC 50204(n) it is illegal for any Licensee to: "Make or service a loan that is not a residential mortgage loan under authority of the license."

A loan that does not meet all the requirements of a "Mortgage loan," a "residential mortgage loan," a "home mortgage loan" or a "federally regulated loan" is not "mortgage loan," a "residential mortgage loan," a "home mortgage loan" or a "federally regulated loan" and is not a loan that can be made or serviced by a Licensee.

If a loan was made on property described in 24 CFR 3500.5(b) Exemptions: It is not a loan meeting the requirements of being a "mortgage loan," a "residential mortgage loan," or a "home mortgage loan."

The first exemption listed in CFC 3500.5(b) is (1) <u>A loan on property of 25 acres or more.</u> If the Claimants' property is 25 acres or more, a loan could not be made on it as a "mortgage loan," a "residential mortgage loan," a "home mortgage loan" because it would exceed the size limits and could not be a residential mortgage and would not be residential real estate.

The Claimants' property was, and is, 27.18 acres so it does not qualify for a residential mortgage/loan and cannot be used to secure a residential mortgage. That was sample, straight forward and factual. On size alone, Claimants' property doesn't qualify as a residential mortgage.

The property is too big to qualify as a residential mortgage or as a federally related mortgage, or a "federally regulated, mortgage". The Licensees/The Debtors: Aegis Lending Corporation and Aegis Mortgage Corporation knew that but they still made the loan, which is a violation of CFC 50204(n).

The Claimants' property is 27+ acres and the Licensees/Debtors knew that because:

1. The Claimants told the Debtors, Aegis Lending Corporation and Aegis Mortgage Corporation, that the property was 27+ acres of income producing agricultural property right up front when asking if they were licensed to make the loan. The Licensees/ Debtors and their Broker assured the Claimants that they were licensed to make the loan on the farm and that they could make the loan;

2. The Claimants gave the Debtors (Aegis Lending Corporation and Aegis Mortgage Corporation) a Business Plan that contained a Property Description detailing 20 acres of income producing row crops and about 5 + acres of horse breeding, training and boarding facilities, with remaining acreage, about 1¾ of an acre, (of 27+ total acres) for Claimants' and the horse trainer's housing.

3. The Debtors, Aegis Lending Corporation and Aegis Mortgage Corporation, had a Real Estate Appraisal report showing the property to be 27.18 acres of Agricultural/ Agricultural Preserve property;

4. The Aegis Broker was given a show and tell of the Claimants' farm operation and of the agricultural real estate, including its 27+ acre size, before the Subject Contract/Loan was signed;

5. The legal description of the property is given as being lot 5, Marston's Subdivision, Book 1 Maps and Surveys, Page 75 recorded with the Yolo County Recorder's Office in 1895 shows the property to be 27.18 acres and gives the dimensions which also establish square footage that equals 27.18 acres, and they, the Debtors, had and have actual and constructive knowledge of the legal description because have done title searches on the Claimants' property that show the legal description and being recorded they have constructive knowledge (per C.C.C. § 1213); and furthermore,

6. The Subject Contract/Loan itself states the Claimants' property is 27.18 acres when it included the legal description of the Claimants' property.

Without a doubt, the Lender, Aegis Lending Corporation, with the assistance and knowledge of Aegis Mortgage Corporation, and their Broker, knew before, and when, they prepared, wrote and created the Subject Contract/Loan that the Subject Contract/Loan did not qualify for a "Residential Mortgage", a "Federally Related Mortgage" or a "Federally Regulated Mortgage" under the California Residential Mortgage Lenders Act and under their California Department of Corporations license because the Claimants' property was, and is, too large to be residential real estate.

The Licensees/Debtors knowingly and intentionally violated **CFC Sec. "50204 Prohibited acts"** that states "A licensee may not do any of the following: (n) <u>Make or service a loan that is not a residential mortgage loan under the authority of the license.</u> (Debtors were licensees.) Because the property is too large: 25 acres or more (27+ acres, actually) to qualify as a residential mortgage, neither Aegis Lending Corporation nor Aegis Mortgage Corporation were licensed to make or service the Subject Contract/ Loan.

It was illegal for the Licensees/Debtors, Aegis Lending Corporation or Aegis Mortgage Corporation, to make or service the Subject Contract/Loan. They knew that the property was too big to be residential property, and they still made and serviced the Subject Contract/Loan.

That means they intended to make an unlawful contract/loan, and they made an unlawful contract/loan. It also means they intended to illegally service the unlawful contract for profit.

Because the provision of law the Debtors violated states that a Licensee (Debtors were licensees) may not make or service a loan that is not a residential loan, the Subject Contract/Loan is illegal in its entirety – and neither Aegis Lending Corporation nor Aegis Mortgage Corporation can make an objection to, or seek modification of, a claim stemming form or based upon a contract/loan they were not, and are not, licensed to service, as such an objection  or modification is in reality nothing but an attempt to enforce the unlawful contract, and for that reason they have no standing to make such an objection or modification. (Nor do they have standing to enforce or sell the Subject Contract/Loan.)

### D.

### THE CONTRACT IS UNLAWFUL ON ITS FACE

Aegis Mortgage Corporation stated in a Business Plan it gave the California Department of Corporations, May 15, 2006 (Ex.# 3) where it returns to previous (including 2005) practices, that,

> "Aegis purchases first and second lien residential mortgage loans secured primarily by on to four-family residences that are originated by subsidiary companies.  Loan purchased from subsidiaries are sold in the secondary market to FNMA, FHLMC and large institutional investors."

In that same letter, Aegis Mortgage Corporation states that it provide,
> "Compliance, Legal, Quality Control, Underwriting, Internal Audit, Accounting, Broker Administration, Secondary Marketing, Human Resources, Information Technology, and Facilities are carried out by Aegis in support of Aegis subsidiaries."

By providing the stated services for the subsidiaries, there was, in reality, no separation between the subsidiary and Aegis Mortgage Corporation.  The subsidiaries could not operate on their own and only functioned with the knowledge, assistance and participation of Aegis Mortgage Corporation, especially when, according to its Business Plan,

> "Aegis' Chief Credit Officer has ultimate authority for establishing credit policies and standards related to the investment quality of Aegis' mortgage origination subsidiaries. The Chief Credit Officer is also responsible for monitoring underwriting oversight and quality control."

Accordingly, Aegis Lending Corporation, the originator of the Subject Contract/Loan made that contact/loan with the knowledge, assistance and participation of Aegis Mortgage Corporation.

By its own admission Aegis Mortgage Corporation and its subsidiaries are in the business of making "residential mortgage loans" and of selling those residential mortgage loans, "in the secondary market to FNMA, FHLMC and large institutional investors."

The Subject Contract/Loan was written as a residential mortgage loan, according to Aegis Mortgage Corporation's business plan, even though it is not, and cannot be, a residential mortgage.

The Subject Contract/Loan states, under "Transfer of Rights in The Property" on page 3 that the address of the property is 13226-50 County Road 99B, and states, "See legal description attached hereto and made parte hereof. 13226 to 13250 (13226-50) are address reserved for the Claimants' property and 13226 and 13250 are the address on the Claimants' property. 13250 being the address of the Claimant and 13226 being the address of the farm's resident horse and dog trainer.

The legal description is given (on page 19 of Ex. #1) as, "LOT 5, MARSTON'S SUBDIVISION, FILED JANUARY 11, 1895, IN BOOK 1 OF MAPS AND SURVEYS, PAGE 75, YOLO COUNTY RECORDS", and that same document gives, "APN No 27-200-11-1".

Ex. # 7: Map/Legal Description of Claimants' property, Book 1 Maps and Surveys, page 75, gives a map of Claimants' property with its dimensions (1329.2 feet by 890.3 feet) and gives its size as 27.18 acres.

That makes the legal description and map part of the Subject Contract/Loan and accordingly, on its face the Subject Contract/Loan is 27.18 acres.

As discussed above the loan originators, Aegis Lending Corporation with the knowledge and assistance of Aegis Mortgage Corporation were licensed by the State of California Department of Corporations under the California Residential Mortgage Lender's Act that restricts licensees (the Debtors) to making and servicing contract/loans to Residential Mortgages and Federally Related Mortgages.

All federally related mortgages, and residential mortgages, have prohibitions, exceptions (discussed earlier in this document), limiting the type of loan that can be made as a residential mortgage or a federally related mortgage, and one of those exceptions is that a residential mortgage or a federally related mortgage cannot be made on property 25 acres or larger. If the property is 25 acres or larger, then a licensee/the Debtors cannot make or service a contract/loan on that property.

Claimants' property is 27.18 acres, which is recorded as part of the Subject Contract/Loan (Deed of Trust Ex. # 1). See Ex. 11: Letter from California Department of Corporations, stating property is too large to be residential property and that Aegis Mortgage Corporation's license had been revoked. The letter only addresses Aegis Mortgage Corporation, but Aegis Lending Corporation was licensed under the same terms (The California Residential Mortgage Lenders Act) that Aegis Mortgage Corporation was licensed, so the letter could equally apply to Aegis Lending Corporation.

Because the property does not qualify as residential property or for a federally related mortgage because of its size, a licensee (including Debtors Aegis Lending Corporation and Aegis Mortgage Corporation) cannot make or service the subject contract loan per C.F.C. § 50204(n).

**C.F.C. § "50204 Prohibited acts"** states
"A licensee may not do any of the following:
(n) Make or service a loan that is not a residential mortgage loan under the authority of the license."

The Yolo County Assessor's Office list 12350 as the address for Assessor's Parcel Number (APN, hereafter) 027-200-11 (also as 027-200-11-1, as the parcel has not been split) for the Complainants' property. See Ex. # 9: APN map, a public record, that shows the Claimants'property to be 27.18 acres and that it is zoned AP (Agricultural Preserve).

That means that the facts that the property is too large to be a residential mortgage and that it is zoned as, and is, an Agricultural Preserve are part of the Subject Contract/Loan.

Because the Claimants' property is an Ag Preserve and is agricultural property it cannot be a residential mortgage and the licensees/Debtors (Aegis Lending Corporation and Aegis Mortgage Corporation) cannot make or service a loan on the Claimants' agricultural property.

To do so, and they did so, is to make and service an unlawful contract made and serviced in violation of C.F.C. § 50204(n).

Because the Subject Contract/Loan contains the legal description of the property as 27.18 acres and gives the APN which is for the Claimants' Agricultural Preserve property, the contract contains two exemptions that prohibit its being made or serviced by a licensee (Aegis Lending Corporation and Aegis Mortgage Coropration).

The Subject Contract/Loan was made by licensees/Debtors when the ENTIRE contract/Loan should not have been made, not just part of it, so the entire contract is unlawful (per C.C.C. "§ 1667 Unlawful contracts defined). The entire contract is unlawful on its face as it cannot be a residential mortgage by state licensing limitations and by federal standards for a federally related mortgage. An unlawful contract cannot be enforced against the Claimants' or their property, including through Debtors' Object to Claims or sought Modification- as both are attempts to enforce or benefit from an unlawful contract.

**E.**

**SUBJECT CONTRACT/LOAN WAS MADE FOR UNLAWFUL PURPOSE**

By its own admission Aegis Mortgage Corporation and its subsidiaries are in the business of making "residential mortgage loans" and of selling those residential mortgage loans, "in the secondary market to FNMA, FHLMC and large institutional investors."

The Subject Contract/Loan was written as a residential mortgage loan, according to Aegis Mortgage Corporation's business plan.

The Subject Contract/Loan was not written on residential property, it was written on agricultural preserve property and property that is 27.18 acres, which is too large to be used for a residential loan. The loan originators and servicers (Aegis Lending Corporation and Aegis Mortgage Corporation) knew the loan could not be written as a residential loan, or serviced as a residential loan, yet it was written as a "residential loan" complying with RESPA and the California Residential Mortgage Lenders Act, when it complied with neither, so Aegis Mortgage Corporation could, according to its Business Plan, sell it (the Subject Contract/Loan) on the secondary (residential mortgage) market. The Subject Contract/Loan was fraudulently formed, and fraudulently place on the Secondary Residential Mortgage market which is proof of the

intentional unlawful creation. Formation, purpose and service of the Subject Contract/Loan by the Debtors.

To write the Subject Contract/Loan as a residential mortgage loan when it does not qualify as a residential mortgage loan, and when the maker's license permits only residential mortgage loans to be made, and to do so for the purpose of selling the Subject Contract/Loan on the secondary residential market, is to unlawfully create the subject contract/loan for the unlawful purpose of fraudulently selling it on the national secondary residential mortgage market, in order to make a profit is to have as the purpose of the Subject Contract/Loan an unlawful and fraudulent sale of the unlawfully made Subject Contract/Loan. That makes the purpose of the Subject Contract/Loan unlawful profit, and that makes the entire Subject Contract/Loan an unlawful contract /loan and as such it cannot be enforced against the Claimants or their property, including through the Objection to Claims and Modification relief sought by the Debtors against the Claimants' claim in Bankruptcy Court.

Furthermore, since the Subject Contract/Loan is unlawful on it face, and since the purpose of the Subject Contract/Loan was, and is, to make an unlawful and fraudulent profit, and that is evident on its face, and in its history of sale and transference, the Subject Contract/Loan cannot be lawfully transferred or sold, and subsequent holders or encumbrancers of the Subject Contract/Loan cannot enforce the unlawful contract/loan against the Claimants or their property, nor can they can they seek to unlawfully profit or benefit from the enforcement of, or through, the Subject Contract/Loan, including by the use of foreclosure proceeding against the Claimants or their property, including through objection or modification through the Bankruptcy Court.

Aegis Lending Corporation and Aegis Mortgage Corporation's whole purpose of creating the Subject Contract/Loan was to write the Contract/Loan as Residential Mortgage/Loan and then to place it in the National Secondary Residential Mortgage Market where investors/buyers would look at the loaned amount ($286,000) and the value of the property ($815,000, See Ex # 8: Real Estate Appraisal) and see it as a good investment with easy recovery in the event of foreclosure (value exceeding 284% of the loaned amount). To that end, the Claimants were victims of the Lender's greed, manipulation of records/documents and purpose. The Lenders

(Aegis Corporations) had to defraud Claimants in order to create the loan on which they would profit through a fraudulent inclusion in bundling and reselling the contract/loan as a "residential mortgage", which is what they did.

The Contract/Loan was fraudulently created by Aegis Corporations pretending to be licensed to make the contract/Loan when they knew they were not, to deceive the Claimants into becoming a borrowers so the contract/loan could be created for the unlawful purpose of fraudulent resale in the secondary residential mortgage market. That makes the entire contract unlawfully created for an unlawful purpose, which is evident on its face by giving the legal description of the property which cannot be residential property.

Claimants request the Court direct the Debtors to reconvey the property and Deed of trust to the Claimants and that the Debtors not be permitted to profit by their unlawful conduct.

## V.

### DEBTOR RESCINDS CONTRACT/LOAN UNDER TRUTH IN LENDING ACT (TILA)

#### LAW

**15 U.S.C. § 1635 (a)** States, "…obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later…" "The creditor shall clearly and conspicuously discloses, in accordance with regulations of the Board, to any obligor I a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section."

**15 U.S.C. § 1635 "(i) Rescission rights in foreclosure**
    **(1) In general**
    Notwithstanding section 1649 of this title, and subject to the time period provided in subsection (f) of this section, in addition to any other right of rescission available under this section for a transaction, after the initiation of any judicial or nonjudicial foreclosure process on the primary dwelling of an obligor securing an extension of credit, the obligor shall have a right to rescind the transaction equivalent to other rescission rights provided by this section, if…
        **(B)** The form of notice of rescission for the transaction is not the appropriate for of written notice published and adopted by the Board or a comparable written notice, and otherwise complied with all the requirements of this section regarding notice."

Assignees of installment contracts may be considered "creditors" under this subchapter even if customers do not become obligated to them until subsequent to the time when disclosures are required. *Glaire v. La Lanne-Paris Health Spa, Inc.*. Cal. 1974, 528 P.2d 357, 117 Cal.Rptr. 541, 12 Cal.3d 91.

## NOTICE OF RESCISSION OF CONTRACT

**DEBTOR HEREBY NOTIFIES** Debtors: Aegis Lending Corporation and Aegis Mortgage Corporation, that Claimants rescind the Subject Contract/Loan under 15 U.S.C. § 1635 subsections (a) and (i)(1)(B), in addition to, and as an alternative of, all the objections/opposition to the Debtors' Objection to Claims that are listed, described and/or discussed in this document, including the August 2006 Notice of Rescission of Contract, and extinguishment of the contract.

The Debtors are actually creditors for the purpose of this rescission under the Truth In Lending Act per *Glaire v. La Lanne-Paris Health Spa, Inc.*. Cal. 1974, 528 P.2d 357, 117 Cal.Rptr. 541, 12 Cal.3d 915, quoted above.

The Truth in Lending Act requires that each borrower be given TWO copies of the Notice of Right of Rescission.[3] Claimants weren't given any copy of any right of rescission of contract. The Deed of Trust, that includes the Subject Contract/Loan, and that was recorded by the Debtors with the Yolo County Recorder's office does not include any reference to, or copy of, any Notice of Right to Rescind Contract for, and directed to, the Claimants or any borrower!

Because 15 U.S.C. § 1635(a) states that,

"obligor shall have the right to rescind the transaction until... the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later"

The information and rescission forms have never been provided to the Claimant, the Claimants' right to rescind the contract continues until the information and required forms are provided, and the Claimant can rescind the contract for any reason (a continuation of the right to rescind- that normally expires after 3 days form delivery of the information (notice) and forms – but continues until the information and forms are delivered): The Debtor rescinds the Subject Contact/Loan.

---

[3] 12 C.F.R. § 226.23(b)(1)

Additionally, and separately, the Claimants argue for rescission and rescind the Subject Contract/Loan under the Truth In Lending Act (TILA, hereafter) 15 U.S.C. § 1635(i) (B) Rescission rights in foreclosure for failure of Lender to provide the required notice of rescission rights.

Claimants' property is in foreclosure per Ex. # 6 :Notice of Default and Ex. # 4: Notice of Election to Sell Under Deed of Trust. Debtor's stating that his property is in foreclosure is not an acceptance or admission that the "foreclosure" is lawful, proper or valid.

Claimants rescind the subject Contract/Loan because they have not received the required notices under the TILA, and for all the grounds, reasons and violations of laws, including –but not limited to- Makers and servicers not being licensed to make or service the Contract/Loan, the making of the contract/loan when there were and are statutory provisions prohibiting its creation or formation; The predatory lending practices of the lenders, servicers and the Debtors; The taking unconscionable advantage of property owners with property in foreclosure; And that the contract is unlawful, unlawful on its face and was created for an unlawful purpose.

This Notice of Rescission of Contract under U.S.C. § 1635 subsections (a) and (i)(10(B) is separate form, and in the alternative to, the Notice of Rescission of Contract and Rescission of Contract made by Claimants in August 2006 under C.C.C. § 1695.14, and of the extinguishment of the Subject Contract/Loan per C.C.C. § 1688.

This Notice of Rescission of Contract is signed on this the 9th day of May, 2009
by _____
K S Mc Clelland, P.O. Box 484, Yolo, CA 95697
AND
By _____
Ingela V. Kaersvang, 13250 Count Road 99B, Woodland, CA 95695

The Claimant, having not received any of the required notices by the lender or its successors, including the Debtors rescinds the Subject Contract/Loan because he was not informed of, or given a copy of any of the required Notices, including the Notice of Right of Rescission and did not include any copy or any required notice, including the booklet titled *Consumer Handbook on Adjustable Rate Mortgages,*[4] or signed acknowledgment of any required notice that was signed by Claimant (See Ex. # 1: Copy of Contract/Loan recorded as

---
[4]  12 C.F.R. § 226.19(b)(1)

part of, and with, the Deed of Trust by Debtors and that was relied upon and referred to by the Debtors in their filings/recordings with the Yolo County Recorder's Office) the right to rescind the contract still exists, especially as the property is in foreclosure (although not a legal foreclosure because it is based upon the Subject Contract/Loan which is unlawful in its entirety.

Claimants retain their rights to have the amount to be returned to Debtors- if any- and the terms of the returning of that amount, to be decided by the court, considering the terms of the contract in view of the unlawful means of its creation and formation, unlawfulness of its purpose (fraudulent resale), and the unlawful conduct and participation of the Debtors.

## CONCLSUSION

For all the reasons given above the Claimants (K S Mc Clelland and Ingela V. Kaersvang) Seek the reconveyance of the Deed of Trust and their property form the Debtors, or that the Debtors pay the Claimants $815,000 the value of the property put in jeopardy by the unlawful conduct of, and unlawful contract made and serviced by Debtors Aegis Lending Corporation and Aegis Mortgage Corporation.

Everything in this document is true and accurate to the best of the undersigneds knowledge and abilities. The undersigned Claimants sign this document under penalty of perjury or the perjury laws of the United States of America.

Signed on this the 9th the day of May 2009 by

_____ and _____

K S Mc CLelland                          Ingela V. Kaersvang