IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AEGIS MORTGAGE CORPORATION, et al.,[1] | ) | Case No. 07-11119 (BLS) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

Objection Deadline: May 19, 2010 at 4:00 p.m. prevailing Eastern time
Hearing Date: May 26, 2010 at 10:30 a.m. prevailing Eastern time

## DEBTORS' OBJECTION TO K.S. McCLELLAND AND INGELA KAERSVANG PROOF OF CLAIM NO. 1847 (AMENDING AND SUPERSEDING PROOFS OF CLAIM NOS. 1686 AND 1687)

The above-captioned debtors and debtors in possession (collectively, the "Debtors" or "Aegis"), hereby submit this *Objection to K.S. McClelland and Ingela Kaersvang Proof of Claim No. 1847 (Amending and Superseding Proofs of Claim Nos. 1686 and 1687)* (the "Claims Objection"), which seeks an order: (1) disallowing proof of claim number 1847 (the "McClelland/Kaersvang Claim") filed on May 11, 2009 by K.S. McClelland ("McClelland") and Ingela Kaersvang ("Kaersvang") (together, the "Claimants"); and (2) deeming proofs of claim numbers 1686 and 1687 filed by McClelland superseded by proof of claim number 1847, and disallowing and expunging such claims on that basis, and/or to the extent they are not deemed superseded, on the same substantive grounds applicable to proof of claim number 1847 (proofs of claim number 1686, 1687 and 1847, the "Claims"). True and correct copies of the Claims are attached hereto as Exhibits 1, 2 and 3, respectively.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Aegis Mortgage Corporation (9883); Aegis Wholesale Corporation (9888); Aegis Lending Corporation (9884); Aegis Correspondent Corporation (0359); Aegis Funding Corporation (9886); Aegis Mortgage Loan Servicing Corporation (0515); Solutions Settlement Services of America Corporation (6879); Solutions Title of America Corporation (7045); and Aegis REIT Corporation (3436). The address for all Debtors is 11381 Meadowglen, Suite I, Houston, TX 77082.

## Introduction

1.      On August 13, 2007 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 the Bankruptcy Code.

2.      The Debtors have continued in possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or an examiner in these cases.  On August 24, 2007, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").

4.      This Court has jurisdiction over the Claims Objection under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) (A) and (L).  Venue of this proceeding is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory predicates for the relief requested herein are section 502(b) of title 11 of the United States Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 3007 ("Rule 3007").

## Business of the Debtors

6.      Prior to filing for bankruptcy, the Debtors and their non-debtor affiliates were a full service residential mortgage company with lending operations in 49 states and offices in 24 states.  As of August 1, 2007, the Debtors employed approximately 1,302 employees who, depending upon their location, worked at the Debtors' corporate headquarters in Houston, Texas,

or at 33 branches located throughout the nation. At the close of July, 2007, the Debtors

generated approximately $800 million in monthly loan originations and were servicing, and/or

interim servicing, approximately $3.6 billion of mortgage loans.[2]

7. In 2007, unprecedented changes in the mortgage loan market, coupled

with the rapid decline in the secondary mortgage markets severely impacted the Debtors' ability

to obtain financing for the origination of loans. In particular, the Debtors experienced

extraordinary increases in early payment defaults, and a corresponding increase in the number of

repurchase requests, which siphoned available cash away from the Debtors. In addition, the

Debtors received substantial margin calls that they were unable to satisfy. Despite the Debtors'

efforts to obtain capital and manage costs, the accelerated demands for large amounts of capital

as the market for the sale of the loans decreased at an unprecedented pace led to margin calls that

were due and payable on or about August 3, 2007. These factors resulted in the termination of

the Debtors' funding by the Warehouse Lenders, caused the Debtors to cease originating loans

and significantly scale back their operations, and forced the Debtors to file for bankruptcy

protection.

8. Subsequent to the Petition Date, the Debtors have directed substantially all

of their efforts, and all of the efforts of their professionals, towards the liquidation of their assets

and remaining servicing operations, minimizing ongoing expenses, analyzing claims against the

Debtors, and addressing ongoing issues and the going-forward strategy and plans for these

chapter 11 cases with key constituencies, including the Committee. The Debtors have done this

---

[2] The factual background regarding the Debtors, including their current and historical business operations and the events precipitating this chapter 11 filing, is set forth in detail in the *Declaration of Edward S. Robertson, Executive Vice President and Chief Financial Officer of the Debtors, in Support of First Day Motions* (the "Robertson Declaration") filed on the Petition Date and fully incorporated herein by reference.

in order to maximize the value of such assets while minimizing the expenses associated with maintaining such assets.

## Claims Procedures

9.      By order dated August 18, 2007, the Court authorized Epiq Bankruptcy Solutions LLC, to serve as the Debtors' claims agent (the "Claims Agent").

10.     By order entered on November 26, 2007 [Docket No. 602], the Court set a bar date of February 1, 2008 for filing proofs of claim, other than certain "Excluded Claims." Over 1,800 proofs of claim have been filed in these cases asserting in excess of $1 billion in claims against the Debtors' estates. The claims are recorded on the official claims registry in these cases (the "Claims Registry") which the Claims Agent maintains. All claims, and all filings in these bankruptcy cases, are publicly available on the website maintained by the Claims Agent for Aegis Mortgage Corporation at http://documents.epiq11.com.

## The Claims

11.     On March 19, 2008, the Claims Agent entered proof of claim number 1686 on the Claims Registry. The next day, on March 20, 2008, the Claims Agent inadvertently entered an identical document on the Claims Registry but assigned it proof of claim number 1687.

12.     Proofs of claim number 1686 and 1687 are identical. Both were filed by McClelland and consist of, a "Letter from K S McC. Re Claims and Offer of Resolution," signed by McClelland, purporting to convey a settlement offer to the Debtor, which states in bold on its face: "**This Letter is Not an Admission to, or Submission of this Claim to, the Bankruptcy Court's Jurisdiction in this Matter.**" *See* Exhibits 1 and 2.

13.     The Debtors objected to proof of claim number 1686 in the Fourth (Non-Substantive) Omnibus Objections to Claims Pursuant To 11 U.S.C. §502(b) and Bankruptcy Rule 3007 [Docket No. 4565] on the basis that proof of claim number 1686 is duplicative of proof of claim number 1687.

14.     The Debtors objected to proof of claim number 1687 in the Fifth (Substantive) Omnibus Objections to Claims Pursuant To 11 U.S.C. §502(b) and Bankruptcy Rule 3007 [Docket No. 4565] on the basis that the Debtors have no liability to McClelland under any applicable law.

15.     On May 11, 2009, Claimants, appearing pro se, filed the Claimants' Opposition to Debtors' Fifth (Substantive) Omnibus Objection to Claims [Docket No. 4637] (the "Response").  The Response states that "Claimants, neither individually nor together, filed a claim as reported, reflected or filed by the Debtors Aegis Lending Corporation and Aegis Mortgage Corporation as Claim Number 1687. . . .  Debtors have not accurately presented or filed Claimants claim.  Claimants' claim is presented in the attached claim documents."  *See* Response at pgs. 1-2.  Concurrently with the Response, Claimants submitted the McClelland/Kaersvang Claim.[3]

16.     The McClelland/Kaersvang Claim encompasses all arguments made in the documents filed as proofs of claim numbers 1686 and 1687.  Accordingly, this Claims Objection objects to the McClelland/Kaersvang Claim as amending and superseding proofs of claim numbers 1686 and 1687, thereby rendering moot the original objections to such claims, and asks

---

[3]   Claimants state that the letter filed as Claims 1686 and 1687 was accompanied by a proof of claim and mailed to an Aegis attorney.  They do not have a copy and do not allege it was mailed to the Claims Agent or the Court.

the Court to disallow the latter claims on that basis, or to the extent they are not superseded, on the substantive grounds presented herein.

17.     On June 11, 2009, Claimants filed the Amended Claimants' Opposition and Objection to Debtors' Fifth Omnibus (Substantive) Objection to Claims [Docket No. 4696] (the "Amended Response") which Claimants state supersedes the Response.

18.     The Claims all relate to a loan of $286,000 issued by Aegis Lending Corporation to Kaersvang which was executed on February 4, 2005 and closed on February 10, 2005 (the "Loan"). The Loan was secured by residential real property owned jointly by Claimants. The Loan was not a business loan or farm loan. A copy of the relevant loan documents (the "Loan Package") including the initial and final executed applications, the executed note, executed notices and disclosures and acknowledgements that Claimants allege they did not receive, and other related documents is attached hereto as Exhibit 4. The initial application was submitted telephonically on January 13, 2005 and transcribed, and a final loan application was signed on February 4, 2005, concurrently with the loan agreement by Kaersvang, the borrower. The Loan Package reflects that the Loan was approved and the documents executed within 22 days of the initial application being submitted.

19.     Shortly after the Petition Date, the Loan, along with all securitized loans being serviced by the Debtors were transferred to Ocwen Financial Corporation, which was the master servicer under the securitization trusts in question.

20.     The McClelland/Kaersvang Claim asserts a claim for $815,000 against Aegis for failing to rescind the Loan (which Claimants did not repay) and demands reconveyance of the deed of trust. It is unclear whether the McClelland/Kaersvang Claim asserts a secured or

unsecured claim, as Claimants entered the amount in box 4 for Secured Claims, but listed the entire amount as the unsecured portion of such secured claim.  For the basis of the claim, the McClelland/Kaersvang Claim refers the reader to the Response, followed by the trust deed, a "Notice of Rescission of Contract and Demand for Reconveyance of Real Property," various default and sale notices, an appraisal, and a letter from the California Dept. of Corporations.

21.    Presumably, the reference to the Response is intended to incorporate the facts and arguments asserted therein (as superseded by the Amended Response) as the substantive basis for affirmative claims for relief against the Debtors.  The Amended Response is convoluted to say the least.  While it is not Debtors' burden to reform Claimants' submissions into coherent claims, the Debtors believe that the Amended Response can be fairly construed as asserting the following affirmative claims for relief addressed below:[4]

a.    Claimants contend the Loan is "unlawful" and cannot be enforced, in violation of certain California lending regulations and statutes for (1) failing to provide a "Consumer Caution and Home Owner Counseling Notice," in violation of section 4973(f)(1) of the California Financial Code ("Cal. Fin. Code"), (2) lending without a responsible belief that they could make the payments in violation of Cal. Fin. Code § 4973(f)(1), (3) charging fees in excess of 6% in violation of Cal. Fin. Code § 4979.6, and (4) delaying the closing while the property was in foreclosure, thereby taking unconscionable advantage of Claimants in violation of Cal. Fin. Code § 50204(m) and section 1695.13 of the California Civil Code  ("Cal. Civ. Code").

---

[4] Pursuant to Bankruptcy Rule 3007(d)(6), Debtors object to any other purported claim or theory of liability on the basis that its validity cannot be discerned from the manner in which it is presented.

b.     Claimants contend that Aegis, as a residential lender, was not licensed to issue the loan because the property exceeds 25 acres and is used for agricultural purposes and, therefore, the loan was unlawful under the California Residential Mortgage Loan Act ("CRMLA"). Therefore, Claimants conclude that Aegis (a) cannot object to the claim and (b) must pay Claimants the alleged value of the property ($815,000).

c.     Claimants contend that they were entitled to rescind the Loan pursuant to Cal. Civil Code § 1695.14 and served a Notice of Rescission effectuating such right pursuant to that statute on August 1, 2006. They also contend they are entitled to rescind the Loan pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635, and purport to do so in the Response. *See* Response, pg. 37. Claimants argue that the Loan is therefore void and the Debtors must reconvey the trust deed or pay Claimants the value of the property, $815,000 (as appraised in 2005) so that they can pay off the Loan. The relationship between the 2005 appraised value of the property and the damages asserted by the Claimants by accepting $286,000 from Debtors and not repaying it is not clear.

22.     Claimants' factual allegations that they contend support these claims are summarized as follows:

a.     There was no real loan application because the only written application was presented for signature together with the loan documents, and thus the Loan must have been approved based solely on the equity in the property and not the ability to repay. *See* Amended Response, pgs, 24-27.

b.     Aegis' loan officer made numerous misrepresentations concerning fees, loan amount, prepayment penalty, interest and monthly payments, and Claimants were not

provided with numerous required disclosures. Claimants assert that the loan officer showed up at 7:00 p.m., was in a hurry and did not answer their questions about the meanings of words, phrases, abbreviations or instructions. *See* Amended Response, pgs. 29-30.

        c.     Claimants further assert that "[d]uring the signing of the Subject Contract/Loan the signers/Claimants, they learned for the first time that there were substantial and material differences between that to which they had agreed and what was in the Subject Contract/Loan." *Id*. at pg. 30. The material differences included (a) they were borrowing more than they requested ($286,200 rather than $230,000); (b) the various fees added up to 7.2%; (c) that a loan discount meant a fee and not a discount; (d) that the interest rate would be higher; (e) that $1351.82 in interest was paid from closing proceeds; (f) that the monthly payment would be much higher; (g) the cash out would be much lower; (h) the benefit to the lender increased 86% and the benefit to the Claimants went down 86%; and (i) the lender had intentionally delayed closing to take advantage of Claimants' need for the Loan to stop foreclosure. *Id*. at pgs. 30-31.

        d.     Claimants signed the Loan only because Aegis delayed the closing so that they had no alternative or they would lose the house to foreclosure, the loan documents had been promised weeks earlier and the broker arrived at 7:00 p.m. and hurried them. *See* Response, pgs. 28-29.

        e.     Claimants were not given a Consumer Caution and Homeowner Counseling Notice. *Id*. at pg. 23. Claimants also were not given Truth-in-Lending Act disclosures concerning their right to rescind. *See* Amended Response, pg. 55.

        f.     The property securing the loan is a 27.18 acre parcel with a residence that is owned by both Claimants and used for horse breeding and crops. *See* Response,

pgs. 39-46. According to Claimants, Aegis was not licensed to lend against such collateral, and thus deceived them, because notwithstanding the Claimants allegation that they desperately needed the Loan to avoid foreclosure, they would never have accepted Aegis' money if only Aegis had been candid and admitted it could not make such a loan. "Had they been truthful and told Claimants they were not licensed to make a loan on Claimants' property, Claimants would have taken Uncle Ted's loan. Uncle Ted may have been a persnickety micromanager, but he was dead on honest." *See* Amended Response, pg. 43. Uncle Ted's offer evidently remained open even after the loan closed because Claimants also allege that if they had been offered a loan without a prepayment penalty, Claimants "could have taken Uncle Ted's offer and paid off the Subject Contract/Loan. . . ." *Id*. at pg. 29.

g. Claimants jointly signed a "Notice of Rescission and Demand for Reconveyance" dated July 27, 2006, asserting a right to rescind pursuant to section 1695.14 of the California Civil Code. It contains all of the factual allegations and legal theories set forth in more recent submissions. The Notice of Rescission is exhibit 2 to proof of claim number 1847. The Notice of Rescission was purportedly served on August 1, 2006, and is stamped as recorded on August 4, 2006. Claimants allege that the Notice was not responded to, and the property is now in foreclosure by the loan servicer, Ocwen Financial Corporation.

23. Based on the foregoing, Claimants assert a right to compel reconveyance of the trust deed securing the Loan. Alternatively, they claim entitlement to payment of $815,000 (based on the 2005 appraised value of the property, which is apparently immune from market forces), presumably on the premise that taking $286,000 from Debtors, and not repaying it, caused them to lose a property that was worth $815,000.

24.     This is not the first judicial proceeding in which these arguments have been asserted.  McClelland filed a chapter 7 petition on September 22, 2008, in the United States Bankruptcy Court for the Eastern District of California, Case No. 08-33054-A-7 (the "Docket"). A copy of the Docket is attached hereto as Exhibit 5.  The Docket reflects, among other things, that McClelland received a chapter 7 discharge on January 27, 2009, that he filed a motion to convert the case to chapter 13 which was denied on July 6, 2009, and that a final decree was entered and the case closed on August 12, 2009.[5]

25.     On April 24, 2009, McClelland filed in his bankruptcy case an Objection to Claims of Aegis Corps; U.S. Bank N,A.; Ocwen; Aztec; and Moran and Notice of Rescission of Contract (Docket No. 38) (the "McClelland Objection").  A true and correct copy McClelland Objection is attached hereto as Exhibit 6.  The 74 page brief contains the same factual allegations and legal theories asserted by Claimants in this case.  On June 10, 2009, the  California Bankruptcy Court issued an order dismissing the McClelland Objection without prejudice. (Docket No. 53) (the "McClelland Order").  A true and correct copy of the McClelland Order is attached hereto as Exhibit 7.

**Relief Requested**

26.     By this Claims Objection, the Debtors seek entry of an order pursuant to section 502(b) of the Bankruptcy Code and Rule 3007 disallowing the McClelland/Kaersvang Claim in its entirety on the bases that: (a) the reassertion of these previously dismissed claims is barred by res judicata; (b) the California lending statutes invoked by Claimants are inapplicable;

---

[5] Kaersvang filed a chapter 7 petition in the same court on February 27, 2009, as Case No. 09-23452, that was dismissed without discharge on January 13, 2010 for failure to file a Financial Management Course Certificate.

(c) there is no claim under the CRMLA because the Loan did not violate Debtors' license; and

(d) there is no claim or right to rescind under state law or TILA. Debtors also request that proof

of claim numbers 1686 and 1687 be deemed superseded by the McClelland/Kaersvang Claim

and that they be disallowed on that basis, or to the extent they are not deemed superseded, on the

substantive grounds presented herein.

## **Basis for Relief**

27.     Section 502(b) of the Bankruptcy Code provides in pertinent part that:

> the court, after notice and a hearing, shall determine the amount of
> [a] claim in lawful currency of the United States as of the date of
> the filing of the petition, and shall allow such claim in such
> amount, except to the extent that…such claim is unenforceable
> against the debtor and property of the debtor, under any agreement
> or applicable law for a reason other than because such claim is
> contingent or unmatured.

11 U.S.C. § 502(b)(1).

28.     As set forth above, each of the claims that can reasonably be discerned

from the documents comprising the McClelland/Kaersvang Claims is unenforceable against the

Debtors, and should be dismissed pursuant to section 502(b) of the Bankruptcy Code.

## **The Claims are Barred by Res Judicata**

29.     The claims asserted by Claimants here were raised by McClelland in his

bankruptcy case as an objection to the claim on the Loan. The objection was dismissed and a

final decree was entered. The "deemed allowance" of a claim pursuant to section 502(a) of the

Bankruptcy Code is res judicata against the reassertion of the same arguments in this case. In

*Siegel v. Federal Home Loan Mortgage Corp.*, 143 F.3d 525 (9th Cir. 1998), the Ninth Circuit

held that a bankruptcy court's implicit allowance of a claim is a final judgment to be given res

judicata effect.  Freddie Mac filed proofs of claim relating to two properties at issue in the

bankruptcy proceeding.  Neither the debtor nor the trustee filed objections to Freddie Mac's

deficiency claims, and so the claims were "deemed allowed" pursuant to section 502(a) of the

Bankruptcy Code.  When the debtor later attempted to sue Freddie Mac for tort and breach of

contract in connection with the foreclosure and refusal to consent to a sale, the district court

dismissed the lawsuit as barred by res judicata, *even though there was no order allowing the*

*claims*, and the Ninth Circuit affirmed.

> [Claimant] asserts that it was Freddie Mac that forced him into
> bankruptcy. Thus, its claims and his asserted defenses and
> counterclaims were the heart and soul of the bankruptcy. His
> failure to object and his choosing to file this action even before his
> bankruptcy closed was an interesting tactic by which he hoped to
> accomplish a discharge of his obligations to Freddie Mac (and
> others), while keeping his own claims against it. Interesting but
> ineffective.

*Id*. at 531.  The same principle applies here with even greater force.  McClelland chose to

commence a judicial proceeding in which his claims and defenses could and should have been

litigated.  This case is even stronger than *Siegel*, because in this case McClelland actually

asserted those claims and defenses.  Had he prevailed, he could have rescinded the Loan or

otherwise rendered it unenforceable.  Instead, he either chose to dismiss his objection or it was

dismissed involuntarily.  Either way, the result is that the claim on the Loan was deemed allowed

in the judicial proceeding that he commenced and in which he received a discharge.  He cannot

simply continue to re-assert his attacks on the Loan in successive forums, whether against

Ocwen in state court or the Debtors in this Court.  As the co-owner of the property, Kaersvang is

in privity with McClelland and so equally barred.  *Taylor v. Sturgell*, 128 S.Ct. 2161, 2172

(2008).

**The California Predatory Lending Statutes are Inapplicable**

30.     Claimants allege various violations of California state law: (a) that no

Consumer Caution and Home Owner Counseling Notice was given in violation of Cal. Fin. Code

§ 4973(k); (b) that the loan was made without any responsible belief that they could make the

payments and based only on the equity in the property, in violation of Cal. Fin. Code §

4973(f)(1); and (c) that the points and fees exceeded 6% in violation of Cal. Fin. Code § 4979.6.

31.     The statutes are inapplicable.  Cal. Fin. Code § 4973 specifies certain

"prohibited acts and limitations for *covered loans*."  (emphasis added).  Likewise, Cal. Fin. Code

§ 4978 provides:

> (b) (1) If a provision in a contract in a *covered loan* violates
> subdivision (a), (b), (c), (d), (e), or (i) of Section 4973, Section
> 4979.6, or Section 4979.7, that provision is unenforceable.

*Id*. (emphasis added).  Cal. Fin. Code § 4970(b) defines "covered loan."  As that statute presently

reads, a "covered loan" is "a consumer loan in which the original principal balance of the loan

does not exceed the most current conforming loan limit for a single-family first mortgage loan

established by the Federal National Mortgage Association in the case of a mortgage or deed of

trust," along with other requirements.  However, the statute was amended in 2005.  For loans

applied for prior to January 1, 2006, under the then-existing version of § 4970(b), a "covered

loan" was a loan having a principal balance of no more than $250,000.  Thus the Loan was not a

"covered loan."  At the time of the Loan, the statute was inapplicable.  A true and correct copy of

Cal. Fin. Code § 4970(b), the annotation to which reflects the 2005 amendment, is attached

hereto as Exhibit 8.

32. The other statute invoked by Claimants is also inapplicable. Claimants allege that Debtors delayed the closing and thereby took unconscionable advantage of them in violation of Cal. Civ. Code § 1695.13 which provides that: "It is unlawful for any person to initiate, enter into, negotiate, or consummate any transaction involving residential real property in foreclosure, as defined in Section 1695.1, if such person, by the terms of such transaction, takes unconscionable advantage of the property owner in foreclosure.." In turn, Cal. Fin. Code § 50204(m) provides that: "a licensee may not . . . . (m) Commit an act in violation of Section 1695.13 of the Civil Code."

33. Cal. Civ. Code § 1695, the Home Equity Sales Contracts Act, is intended to protect "homeowners whose residences are in foreclosure . . . against fraud, deception, and unfair dealing by home equity purchasers." Cal. Civ. Code § 1695(a). Thus, the type of "unconscionable" conduct implicated by the statute is conduct intended to deprive homeowners of their home equity, not simply making a loan. *See Boquilon v. Beckwith*, 57 Cal.Rptr.2d 503, 518 (1996) (even if loan was arguably usurious, no unconscionable conduct where "primary motive was not to capture their home equity"). Not surprisingly, therefore, banks, credit unions and other licensed lenders are excluded from § 1695.13 because their business is making loans, not acquiring property. Section 10133.1 of the California Business & Professions Code further provides that "Section 1695.13 of the Civil Code do[es] not apply to any of the following . . . (6) Any person licensed as a finance lender when acting under the authority of that license. . . . [or] (10) Any person licensed as a residential mortgage lender or servicer when acting under the authority of that license." Regardless, even absent this statutory exclusion, the alleged conduct of the Debtors does not remotely constitute taking "unconscionable advantage" within the

meaning of the statute as a matter of law.  With respect to undue delay, the Loan was approved

and executed 22 days after the initial application which was made by telephone.  Moreover, the

allegations could not sustain a conclusion that the Loan was intended as a means to acquire title

and capture Claimants' equity in their residence.

**Claimants Have No Claim Under the California Residential Mortgage Lending Act**

34.     Claimants contend that Aegis, as a residential lender, was not licensed to

issue the loan because the property exceeds 25 acres and is used for agricultural purposes, and so

the loan was unlawful under the California Residential Mortgage Lending Act, California

Financial Code § 50000, et seq.  ("CRMLA").  Therefore, Claimants conclude that Aegis (a)

must pay Claimants the alleged value of the property ($815,000) and (b) cannot object to the

claim.

35.     The statutory analysis is incorrect.  California Financial Code § 50204

provides that:  "A licensee may not do any of the following: . . .  (n) Make or service a loan that

is not a residential mortgage loan under the authority of the license."  Cal. Fin. Code § 50003(o)

defines "residential mortgage loan" as follows:

> "Mortgage loan," "residential mortgage loan," or "home mortgage
> loan" means a federally regulated mortgage loan as defined in
> Section 3500.2 of Title 24 of the Code of Federal Regulations, or a
> loan made to finance construction of a one to four family dwelling.

36.     The referenced regulation, 24 C.F.R. § 3500.2, sets forth regulations

promulgated under the Real Estate Settlement Procedures Act ("RESPA").  The definition does

not contain any 25 acre limitation.  In relevant part, under § 3500.2(b):

> *Federally related mortgage loan or mortgage loan* means as
> follows:

(1)  Any loan (other than temporary financing, such as a construction loan):

(i)  That is secured by a first or subordinate lien on residential real property, including a refinancing of any secured loan on residential real property upon which there is either:

(A)  Located or, following settlement, will be constructed using proceeds of the loan, a structure or structures designed principally for occupancy of from one to four families. . . .

or

(B) Located or, following settlement, will be placed using proceeds of the loan, a manufactured home; and

(ii) For which one of the following paragraphs applies. The loan:

(A) Is made in whole or in part by any lender that is either regulated by or whose deposits or accounts are insured by any agency of the Federal Government;

* * *

[or] (C) Is intended to be sold by the originating lender to the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation (or its successors), or a financial institution from which the loan is to be purchased by the Federal Home Loan Mortgage Corporation (or its successors). . . .

37.  Accordingly, a "residential mortgage loan" under CRMLA means a loan secured by a first or subordinate lien on residential real property on which there is a structure or are structures for one to four families, by any lender subject to federal regulations or with insured accounts or connected in any manner with the federal government.  Consistent therewith, "residential real property" is defined in Cal. Fin. Code § 50003(t) as follows: "(t) 'Residential

real property' or 'residential real estate' means real property located in this state that is improved by a one-to-four family dwelling." There is no size or use limitation, only a requirement that it be used as a residence.

38.     In sum, CRMLA's definitions encompass loans secured by real property with residences for 1-4 families, and do not exclude such loans if the property exceeds 25 acres or is zoned or used for agricultural purposes. Thus, the Loan did not exceed the scope of Aegis' license. While RESPA excludes loans on property of over 25 acres under 12 C.F.R. § 3500.5, CRMLA specifically references only § 3500.2 and only for definitional purposes. It does not reference or incorporate RESPA in its entirety. Accordingly, Claimants' arguments based on the size of the property, or its characterization as agricultural for tax or zoning purposes, is irrelevant.

### Claimants Have No Right to Rescind the Loan Under State Law or TILA

39.     Claimants contend that they were entitled to rescind the loan pursuant to Cal. Civ. Code § 1695.14 and that the Notice of Rescission, purportedly served on August 1, 2006 and recorded on August 4, 2006, effectuated such rescission. They also contend that are entitled to rescind pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635, and purport to effectuate that rescission by means of a signed statement to that effect in the body of the Response at page 37. Both arguments are frivolous.

40.     The right to rescind pursuant to Cal. Civ. Code § 1695.14 is dependent upon a violation of § 1695.13. The provision confers a right to rescind "any transaction involving residential real property in foreclosure, as defined in Section 1695.1, which is in violation of Section 1695.13 by the property owner within two years of the date of the

recordation of the conveyance of the residential real property in foreclosure." Cal. Civ. Code § 1695(a).

41.     As addressed above, there is no violation of Cal. Civ. Code § 1695.13. Not only are Debtors excluded from that statute as licensed residential lenders, but the alleged conduct as a matter of law does not remotely resemble taking "unconscionable advantage" within the meaning of that statute, which relates to unscrupulous activities of home equity purchasers.

42.     Claimants also contend that they may rescind the Loan pursuant to TILA, 15 U.S.C. § 1635. The asserted basis for rescission is Debtors' alleged failure to provide a notice of the right to rescind. *See* Amended Response, pgs. 54-55. Claimants purport to exercise that right in a signed statement dated May 9, 2009. *See* Response, pg. 37. They take care to specify that the May 2009 rescission under TILA (the "TILA Rescission Notice") is separate from the August 2006 Rescission under Cal. Civ. Code § 1695.14:

> This Notice of Rescission of Contract under U.S.C. § 1635 subsections (a) and (i)(B) is separate form [sic], and in the alternative to, the Notice of Rescission of Contract and Rescission of Contract made by Claimants in August 2006 under C.C.C. § 1695.14, and of the extinguishment of the Subject Contract/Loan per C.C.C. § 1688.

*See* Response, pg. 37; *See* Amended Response, pg. 55.

43.     15 U.S.C. § 1635(a) provides that in the case of a consumer credit transaction in which the creditor acquires a security interest in property to be used as the principal residence of the obligor, the obligor "shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery

of the information or rescission forms."  To exercise the right to rescind, the obligor must "notify the creditor of the rescission by mail, telegram, or other means of written communication."  12 C.F.R. § 226.23(a)(2).  Notice is deemed effective "when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business."  *Id*.  Here, the Loan closed on February 10, 2005, and the TILA Notice of Rescission was mailed on May 9, 2009, well over three days later.

44.    Claimants contend that they did not receive the notice of their right to rescind and so have an unlimited amount of time to do so.  That is incorrect factually and legally.  Factually, Claimants received *and executed* their TILA notices.  *See* Loan Package at Exhibit 4.  Legally, even if they had not received their TILA notices, the right to rescind expired no later than February 10, 2008.  15 U.S.C. § 1635(f) provides that:  "An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor. . . ."  Since the TILA Notice of Rescission was served on May 9, 2009, well over four years after the Loan closed, the time to rescind under TILA has expired.  It bears mention as well that rescission requires Claimants to tender the return of the Debtors' property, *i.e*., the loan proceeds, albeit without finance charges.  15 U.S.C. § 1635(b).  Claimants cannot demonstrate any ability to do that; rather, their theory is that the alleged failure to give notice of the right to rescind means that they may rescind without returning the Loan proceeds.

45.    Finally, Claimants' alternative request for damages is also time-barred.  15 U.S.C. § 1640(e) establishes a limitation period on damage claims, providing that "[a]ny action

under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." *See Hubbard v. Fidelity Federal Bank*, 91 F.3d 75, 79 (9th Cir. 1996) (obligor has one year from each of the lender's inaccurate disclosures to file suit). Inaccurate disclosures are deemed to occur at the date of consummation of the loan, and thus the statutory period "runs from the date of consummation of the transaction." *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986). No damage action was brought within one year, hence TILA damage claims are time-barred.

### Responses to Objections

46. <u>Filing and Service of Responses.</u> To contest this Claims Objection, a written response must be filed and served (a "Response") so that it is <u>received</u> no later than 4:00 p.m. (Eastern Time) on May 19, 2010. Claimants should carefully read the Claims Objection and proposed Order thereon. If Claimants timely file a written Response and wish to oppose the Claims Objection, they must attend or make other arrangements to participate in the hearing on the objection, which hearing is scheduled to be held on May 26, 2010 at 10:30 a.m. before the Honorable Brendon L. Shannon, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801 (the "Hearing").

47. Every Response must be filed and served upon the following entities at the following addresses: (a) Office of the Clerk, United States Bankruptcy Court for the District of Delaware, Marine Midland Plaza, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801; and (b) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899, Attn: Laura Davis Jones, Esquire.

48. <u>Content of Responses.</u>  Every Response to the Claims Objection must contain at a minimum the following:

a. a caption setting forth the name of the Court, the names of the Debtors, the case number and the title of the objection to which the Response is directed;

b. the name of the claimant and description of the basis for the amount of the disputed claim(s);

c. a concise statement setting forth the reasons why the disputed claim(s) should not be disallowed for reasons set forth in the Claims Objection including, but not limited to, the specific factual and legal bases upon which Claimants rely in opposing the Claims Objection;

d. all documentation or other evidence supporting the disputed claim(s) not included with the proof of claim previously filed with the Bankruptcy Court, upon which Claimants rely in opposing the Claims Objection ; and

e. the name, address, telephone number and fax number of the person(s) (which may be the claimant or a legal representative thereof) to whom counsel for the Debtors should serve a reply to the Response and who possesses authority to reconcile, settle, or otherwise resolve the objection to the disputed claim(s) on behalf of Claimants.

49. <u>Timely Response Required.</u>  If a claimant fails to file and serve a timely Response, then <u>without further notice to the claimant or a hearing</u>, the Debtors will present to the Court an order disallowing the disputed claims in their entirety and authorizing and directing the Claims Agent to expunge the disputed claims.

50.     Service Address.  If a Response contains an address for the claimant different from that stated on the disputed claims, the address in the Response shall constitute the service address for future service of papers upon the claimant, unless or until counsel for the Debtors receives written notice from the claimant or the claimant's counsel of a changed service address.

## Adjournment of Hearing

51.     The Debtors reserve the right to adjourn the hearing on the Claims Objection.  In the event that the Debtors so adjourn the hearing, they will state that the hearing on the Objection and/or Response has been adjourned on the agenda for the hearing on the Claims Objection, which agenda will be served on the person designated by the claimants in their Response.

## Reservation of Rights

52.     The Debtors expressly reserve the right to amend, modify, or supplement this Claims Objection, and to file additional objections to any of the claims (filed or not) that Claimants may have asserted or may assert against the Debtors.  Should one or more of the grounds of objection stated in this Claims Objection be overruled, the Debtors reserve their rights to object to Claimants' claims on any other ground that bankruptcy or non-bankruptcy law permits.

## Further Information

53.     Questions about or requests for additional information about the Claims Objection should be directed to the Debtors' counsel (**Attn: Harry Hochman, Esq.**) by telephone at (310) 277-6910 or by email at hhochman@pszjlaw.com.

54. Claimants should not contact the Clerk of the Court to discuss the merits of their claims or this Claim Objection.

## Notice

55. Notice of this Claim Objection has been given to the following parties, or in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) the Debtors' warehouse lenders and servicing advance creditors, Bear Stearns Mortgage Capital Corporation, Credit Suisse First Boston Mortgage Capital, LLC, and Lehman Brothers Bank, FSB; (iii) the Debtors' additional warehouse lenders, Residential Funding Company, LLC, IXIS Real Estate Capital, Countrywide Warehouse Lending, Liquid Funding Limited, Morgan Stanley Bank, and UBS Real Estate Securities, Inc; (iv) Madeleine L.L.C.; (vi) the Committee; (v) parties requesting notice under Bankruptcy Rule 2002; and (vi) Claimants. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

56. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) disallowing proof of claim number 1847; (ii) deeming proofs of claim numbers 1686 and 1687 superseded by claim no. 1847 and disallowing such claims on that basis, or to the extent not superseded, on the substantive grounds presented herein; and (iii) granting the Debtors such other and further relief as is just and proper.

Dated:  April 26, 2010

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Kathleen P. Makowski
Laura Davis Jones (Bar No. 2436)
Harry Hochman (CA Bar No. 132515)
Kathleen P. Makowski (Bar No. 3648)
919 North Market Street, 17th Floor
Wilmington, DE  19899
Telephone:  302-652-4100
Facsimile:  302-652-4400
Email:  ljones@pszjlaw.com
          hhochman@pszjlaw.com
          kmakowski@pszjlaw.com