IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AEGIS MORTGAGE CORPORATION, *et al.*,[1] | ) | Case No. 07-11119 (BLS) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Related Docket No. 5431** |

**DECLARATION OF MICHAEL C. BALOG IN SUPPORT OF
CONFIRMATION OF SECOND AMENDED CHAPTER 11 PLAN
OF AEGIS MORTGAGE CORPORATION, ET AL.**

I, Michael C. Balog, make this Declaration pursuant to section 1746 of title 28 of the United States Code and hereby state:

1. I am the President and General Counsel of Aegis Mortgage Corporation and its affiliated co-debtors. I am authorized to make decisions with respect to all aspects of the management and operation of the Debtors' business, including, without limitation, oversight of the prosecution of the Debtors' bankruptcy cases.

2. This declaration is submitted in support of confirmation of the *Second Amended Chapter 11 Plan of Aegis Mortgage Corporation, et al.,* [Docket No. 5431] (the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Aegis Mortgage Corporation (9883); Aegis Wholesale Corporation (9888); Aegis Lending Corporation (9884); Aegis Correspondent Corporation (0359); Aegis Funding Corporation (9886); Aegis Mortgage Loan Servicing Corporation (0515); Solutions Settlement Services of America Corporation (6879); Solutions Title of America Corporation (7045); and Aegis REIT Corporation (3436). The address for all Debtors is 11381 Meadowglen, Ste. 1, Houston, TX 77042.

DOCS_DE:164491.3

"Plan")[2] as modified by the amendments set forth in the *Submission of Modifications to Second Amended Chapter 11 Plan of Aegis Mortgage Corporation, et al.* [Docket 5529]. I am familiar with the Plan, the requirements for confirmation of the Plan and the means for its implementation.

3. I have reviewed the *Debtors' Memorandum of Law in Support of Confirmation of Second Amended Chapter 11 Plan of Aegis Mortgage Corporation, et al.* (the "Memorandum"). I adopt the factual assertions set forth in the Memorandum as my own and such assertions are incorporated into this declaration by this reference. I have personal knowledge of the facts set forth herein and could and would competently testify thereto if required to do so.

4. As set forth below, the Debtors have sufficient cash on hand to pay, in full, all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims (Non-Tax), and Allowed Secured Claims (if necessary to the extent of the secured party's interest in its collateral), to establish adequate reserves for Disputed Claims, to the extent necessary, and to make distributions of cash payments to the Holders of Allowed Claims in Classes 3, 4, 5, 7 and 8.

5. I believe the Plan is feasible and the Debtors will be able to meet their obligations under the Plan. As of November 1, 2010, which is the projected Effective Date of the Plan, the Debtors will hold approximately $25 million in cash. The Debtors selected the Aegis REIT Disposition option under the Plan. The closing of the Aegis REIT Sale Agreement

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

(which was previously approved by the Court on August 17, 2010), occurred on October 6, 2010. The closing is a condition to the effectiveness of the Plan and, hence, the Plan is likely to be promptly consummated following confirmation.

6.  Generally speaking, the Plan is a liquidating plan pursuant to which the Debtors' collected assets will be distributed to Creditors in accordance with the terms of the Plan. The Plan has adequate means for its implementation.

7.  The unclassified Claims, and their treatment under the Plan, can be summarized as follows:

| CLASS NO. | DESCRIPTION | ESTIMATE OF CLAIM AMOUNTS ULTIMATELY ALLOWABLE | TREATMENT |
|---|---|---|---|
| N/A | Administrative Claims<br><br>Estimated Recovery: 100% | $220,000 | The Liquidating Debtors shall pay each Holder of an Allowed Administrative Claim in full. |
| N/A | Priority Tax Claims<br><br>Estimated Recovery: 100% | $680,000 | The Liquidating Debtors shall pay each Holder of an Allowed Priority Tax Claim in full. |
| N/A | Professional Fee Claims<br><br>Estimated Recovery: 100% | $546,000[3] | The Liquidating Debtors shall pay Professionals from the Claims Reserve Account all of their respective accrued and Allowed Professional Fee Claims arising prior to the Effective Date. |

---

[3] The estimated amount of outstanding Professional Fee Claims is based on an anticipated Effective Date of November 1, 2010; this amount will vary based on interim payments made prior to the Effective Date, additional unanticipated services rendered or expenses incurred prior to the Effective Date, and possible delays in the occurrence of the Effective Date.

8. The classified Claims, and their treatment under the Plan, can be summarized as follows:

| CLASS NO. | DESCRIPTION | ESTIMATE OF CLAIM AMOUNTS ULTIMATELY ALLOWABLE | TREATMENT |
|---|---|---|---|
| 1 | Priority Claims<br><br>Estimated Recovery: 100% | $1,150,000 | The Liquidating Debtors shall pay from the Plan Proceeds the Allowed Amount of each Class 1 Priority Claim. |
| 2 | Secured Claims<br><br>Estimated Recovery: 100% | <$100,000 | To the extent any Secured Claims exist, at the option of the Debtors, Reorganized Aegis REIT or the Liquidating Debtors, as applicable, one of the following treatments shall be provided: (i) the Holder of such Claim shall retain its Lien on its collateral until such collateral is sold; (ii) on or as soon as practicable after the later of (a) the Effective Date, or (b) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim, or as otherwise agreed between the holder of such Claim and the Liquidating Debtors, the Holder of such Secured Claim will receive a Cash payment (from the Plan Proceeds); or (iii) the collateral securing the Creditor's Secured Claim shall be abandoned to such Creditor, in full satisfaction, release, and discharge of such Secured Claim. |
| 3 | Convenience Claims<br><br>Estimated Recovery: 20% | $5.7 million[4] | Each Holder of an Allowed Convenience Claim shall receive, in exchange for and in full satisfaction of such Claim, a Cash payment from the Plan Proceeds equal to 20% of the amount of such Claim. |
| 4 | Consolidated | $182.5 million[5] | Each Holder of an Allowed Class 4 Claim shall |

---

[4] For purposes of the estimated amount of Convenience Claims, the Debtors have assumed that each Class 4 Creditor holding Claims in an aggregate amount up to $62,500 would exercise the election to reduce such Claims to a single Convenience Claim of $25,000 under Class 3 of the Plan (this assumes an 8% distribution to the Holder of a Class 4 Claim – if such Holder remained in Class 4, then it would receive a distribution of $5,000, the same amount that the Holder of a Convenience Claim in the amount of $25,000 would receive in Class 3 at a 20% distribution). As of July 13, 2010, it appears that there are approximately 1,600 existing Unsecured Claims under $25,000, for an aggregate amount of approximately $3.1 million. If Creditors with Unsecured Claims between $25,000 and $62,500 elected to reduce their claims to Convenience Claims of $25,000, the aggregate amount of claims in Class 3 would increase to approximately $5.7 million, with a corresponding reduction of the aggregate amount of claims in Class 4.

[5] This estimate includes the $133 million Madeleine Claim allowed by the Plan (following the reduction of such claim from $135 million as a result of the transfer of $2 million of such claim under the Thompson Stipulation) and an additional $13.9 million in miscellaneous Unsecured Claims that are not Convenience Claims. In addition, under the Plan and certain Claim settlements, (i) the Unsecured Claim of UBS (defined below) will be Allowed in the amount of $14.1 million, (ii) the Unsecured Claim of CSFB (defined below) will be Allowed in the amount of $12.2 million, (iii) the Unsecured Claim of Countrywide (defined below) will be Allowed in the amount of $2.3 million,

| CLASS NO. | DESCRIPTION | ESTIMATE OF CLAIM AMOUNTS ULTIMATELY ALLOWABLE | TREATMENT |
|---|---|---|---|
|  | Debtors Unsecured Claims<br><br>Estimated Recovery: approximately 5-15% |  | receive a Pro Rata share (with the Holders of Class 5 Claims) of the remaining available Net Plan Proceeds. In addition (i) each Holder of an Allowed Unsecured Claim in Class 4 Creditors Subgroup A shall receive a Pro Rata share of the Class 4 Creditors Contribution, and (ii) each Holder of an Allowed Unsecured Claim in Class 4 Creditors Subgroup B shall receive a Pro Rata share of the WARN Contribution. |
| 5 | Consolidated Debtors EPD/Breach Claims<br><br>Estimated Recovery: approximately 5-15% | $55 million | The allowance or disallowance of Class 5 EPD/Breach Claims (Submitted) shall be determined in accordance with the EPD/Breach Protocol if the EPD/Breach Claim Protocol Conditions are satisfied. If the EPD/Breach Claim Protocol Conditions are not satisfied, the allowance or disallowance of such claims will be determined in accordance with the Bankruptcy Code and the resolution procedures established under the Plan. The allowance or disallowance of Class 5 EPD/Breach Claims (Opt Out) shall be determined in accordance with the Bankruptcy Code and the resolution procedures established under the Plan. Each Holder of an Allowed Class 5 EPD/Breach Claim (Submitted and Opt Out) shall receive a Pro Rata share (with the Holders of Class 4 Claims) of the remaining available Net Plan Proceeds. |
| 6 | Velazquez Claims<br><br>Estimated Recovery: Not applicable | Not applicable | Holders of Velazquez Claims that are Velazquez Class Members will be treated *outside the Plan* pursuant to the terms and conditions of the Velazquez Settlement. Holders of Velazquez Claims that are Velazquez Excluded Class Members will be treated as Class 4 Creditors, *provided that*, such Holders obtain leave of the Bankruptcy Court to file a late Proof of Claim. |
| 7 | Aegis REIT Unsecured Claims<br><br>Estimated Recovery: de | $<100,000[6] | Each Holder of an Allowed Class 7 Unsecured Claim shall receive the same treatment as the Holders of Allowed Class 4 Unsecured Claims (and such claims shall be deemed classified in Class 4. |

---

and (iv) the Unsecured Claim of Thompson will be Allowed in the amount of $7 million (including the $2 million transferred to Thompson by Madeleine).

[6] Under the MOU, described below, pursuant to the Plan the $178 million Claim of Madeleine will be allowed and treated as a Class 4 Claim against the Consolidated Debtors in the amount of $133 million; hence, the remaining amount of Unsecured Claims asserted against Aegis REIT is negligible.

| CLASS NO. | DESCRIPTION | ESTIMATE OF CLAIM AMOUNTS ULTIMATELY ALLOWABLE | TREATMENT |
|---|---|---|---|
|  | minimus |  |  |
| 8 | Aegis REIT EPD/Breach Claims<br><br>Estimated Recovery: de minimus | $<55 million[7] | The allowance or disallowance of Class 8 EPD/Breach Claims shall be determined in accordance with the EPD/Breach Protocol if the EPD/Breach Claim Protocol Conditions are satisfied. If the EPD/Breach Claim Protocol Conditions are not satisfied, the allowance or disallowance of such claims will be determined in accordance with the Bankruptcy Code. Each Holder of an Allowed Class 8 EPD/Breach Claim shall receive the same treatment as the Holders of Allowed Class 5 Unsecured Claims (and such claims shall be deemed classified in Class 5. |
| 9 | Intercompany Claims<br><br>Recovery: $0 | $0 | There shall be no distribution on account of any Intercompany Claims. |
| 10 | Consolidated Debtors Equity Interests<br><br>Recovery: $0 |  | There shall be no distribution on account of Class 10 Equity Interests. Upon the Effective Date, all Class 10 Equity Interests will be terminated and canceled and will cease to exist. |
| 11 | Aegis REIT Preferred Stock Equity Interests<br><br>Estimated Recovery: $0 or de minimus |  | All Class 11 Equity Interests will be terminated and cancelled and will cease to exist. |
| 12 | Aegis REIT Common Stock Equity Interests<br><br>Recovery: $0 |  | All Class 12 Equity Interests will be terminated and cancelled and will cease to exist. |

        9.      Based upon the foregoing, the Debtors have sufficient cash to pay all Allowed Claims that are required to be paid in cash under Bankruptcy Code sections 1129(a)(9)

---

[7] This estimate assumes that Aegis REIT may be jointly and severally liable for the EPD/Breach Claims asserted against the Consolidated Debtors. The Debtors have not determined what portion of such claims, if any, is *not* a potential obligation of Aegis REIT. On the other hand, the Debtors are not aware of any EPD/Breach Claims that are solely the potential obligation of Aegis REIT. Hence, the Debtors estimate that the amount of EPD/Breach Claims in Class 8 of the Plan is possibly less than the same Claims in Class 5 of the Plan.

and (12) and have demonstrated the Plan is feasible as required under Bankruptcy Code section 1129(a)(11).

10. In addition, the Debtors meet the other requirements under Bankruptcy Code section 1129(a) for confirmation of the Plan, and for confirmation under section 1129(b). In this regard:

- The Debtors and their Plan comply with the applicable provisions of title 11, including the requirements of Bankruptcy Code section 1122 regarding proper classification of claims and interests, and the requirements of Bankruptcy Code section 1123(a) regarding the descriptions and treatment of classes of claims, adequate means for implementation, and changes to its charter.
- The Plan has been proposed in good faith (and not for the avoidance of taxes or section 5 of the Securities Act of 1933).
- All payments made or to be made by the Debtors for services, costs and expenses in connection with the case or the Plan have been approved as reasonable or will be subject to the approval of the Court as reasonable.
- Bankruptcy Code section 1129(a)(6) is inapplicable to the Debtors.
- As set forth in the Voting Summary filed concurrently herewith, at least one impaired Class of Claims entitled to vote under the terms of the Plan has accepted the Plan without regard to the vote of any Insider of the Debtors.
- Consistent with the requirements of Bankruptcy Code section 1129(a)(9), on the Effective Date, or as soon thereafter as is reasonably practicable, each Holder of an Allowed Priority Tax Claim shall be paid by the Debtors, in full and final satisfaction of such Holder's Allowed Claim.
- All fees under 28 U.S.C § 1930 have been or will be paid by the Liquidating Debtors.
- Bankruptcy Code Sections 1129(a) (13), (14), (15), and (16) are not applicable to the Debtors.
- The cram down of the Holders of Class 7, Class 8, Class 9, Class 10 and Class 12 Interests under the Plan is appropriate under section 1129(b) of the

Bankruptcy Code because the Plan does not unfairly discriminate against the Holders of Interests and the treatment in the Plan of such Class is fair and equitable in that no junior class of claims or interests shall receive anything under the Plan.

11. The disclosures required by Bankruptcy Code section 1129(a)(5) have been made. I confirm that I have been selected as the Responsible Officer and that the disclosures set forth in the Amended Notice of Selection of Responsible Officer are accurate.

12. The Liquidation Analysis attached as <u>Exhibit 1</u> to the Disclosure Statement is accurate and demonstrates that the Holders of Allowed Claims will be paid at least as much as such Holders would be paid in chapter 7 liquidation.

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct EXECUTED this 15th day of October, 2010

<i>/s/ Michael C. Balog</i><br>
Michael C. Balog<br>
President<br>
Debtors and Debtors in Possession