IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AEGIS MORTGAGE CORPORATION, et al.[1] | ) | Case No. 07-11119 (BLS) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Re: Docket No. 5431 |

## ORDER CONFIRMING MODIFIED SECOND AMENDED CHAPTER 11 PLAN OF AEGIS MORTGAGE CORPORATION, ET AL.

A hearing was held before this Court on October 20, 2010 (the "Confirmation Hearing"), to consider confirmation of the *Second Amended Chapter 11 Plan of Aegis Mortgage Corporation, et al.,* dated August 13, 2010 (the "Plan"). The Plan was filed by the debtors and debtors in possession (the "Debtors," or the "Proponents") in the above-captioned cases. Unless otherwise defined, a capitalized term used in these findings, conclusions and order shall have the meaning set forth in the Plan.

Laura Davis Jones, Henry C. Kevane and James E. O'Neill, of Pachulski Stang Ziehl & Jones LLP, appeared on behalf of the Debtors. Mark T. Power and Jeffrey Zawadzki, of Hahn & Hessen LLP, appeared on behalf of the Committee. Other appearances are noted on the record of proceedings of the Confirmation Hearing.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Aegis Mortgage Corporation (9883); Aegis Wholesale Corporation (9888); Aegis Lending Corporation (9884); Aegis Correspondent Corporation (0359); Aegis Funding Corporation (9886); Aegis Mortgage Loan Servicing Corporation (0515); Solutions Settlement Services of America Corporation (6879); Solutions Title of America Corporation (7045); and Aegis REIT Corporation (3436). The address for all Debtors is 11381 Meadowglen, Suite 1, Houston, TX 77042.

The Court has reviewed the Plan, the *Disclosure Statement in Respect of Second Amended Chapter 11 Plan of Aegis Mortgage Corporation, et al.*, dated August 13, 2010 (the "Disclosure Statement"), the *Order Granting Debtors' Motion for Entry of an Order (A) Approving the Adequacy of the Debtors' Disclosure Statement, et seq.*, entered on August 18, 2010 (the "Disclosure Statement Order"), the *Notice of: (I) Entry of Order Approving Disclosure Statement; (II) Hearing to Confirm Plan; and (III) Related Important Dates*, filed on August 20, 2010 (the "Confirmation Hearing Notice"), and the following pleadings and declarations submitted in support of the Plan, among other filings of record in the Chapter 11 Cases:

(1)     The various affidavits[2] (collectively, the "Proof of Plan Service"), setting forth evidence of (a) service of the Confirmation Hearing Notice, (b) transmittal of the Plan, the Disclosure Statement and the related solicitation materials to be mailed pursuant to the Disclosure Statement Order, and (c) publication of the Confirmation Hearing Notice;

(2)     *Debtors' Memorandum in Support of Confirmation of Second Amended Chapter 11 Plan of Aegis Mortgage Corporation, et al.*, filed by the Proponents on October 15, 2010;

(3)     *Declaration of Michael C. Balog in Support of Confirmation of Second Amended Chapter 11 Plan of Aegis Mortgage Corporation, et al.*, filed by the Proponents on October 15, 2010; and

---

[2] Specifically, the: (i) *Affidavit of Service Regarding Notice of: (I) Entry of Order Approving Disclosure Statement; (II) Hearing to Confirm Plan; and (III) Related Important Dates*, filed on August 23, 2010 [Docket 5457]; (ii) *Affidavit of Publication of the Notice of: (I) Entry of Order Approving Disclosure Statement; (II) Hearing to Confirm Plan and (III) Related Important Dates* filed on September 8, 2010 [Docket 5495]; and (iii) *Affidavit of Service of Solicitation Materials*, filed on September 24, 2010 [Docket 5510].

(4)     *Declaration of Christina F. Pullo on Behalf of Epiq Bankruptcy Solutions,*

*LLC, Certifying Voting on the Second Amended Chapter 11 Plan of Aegis Mortgage*

*Corporation, et al.*, filed by the Claims Agent on October 15, 2010, tallying the results of voting

on the Plan (the "Voting Summary").

It appears that the following objections to confirmation of the Plan have been

timely filed by the September 28, 2010, deadline established under the Disclosure Statement

Order:  (a) Objection of K S Mc Clelland and Ingela V. Kaersvang [Docket 5424], filed on

August 9, 2010 ("McClelland Objection"); (b) *Internal Revenue Service's Objection to*

*Confirmation* [Docket 5515], filed on September 28, 2010 ("IRS Objection"); and (c) *Objection*

*of Dallas County and Harris County to Second Amended Plan of Aegis Mortgage Corporation,*

*et al.* [Docket 5517], filed on September 28, 2010 ("Texas Objection").  It appears that the

McClelland Objection has been resolved in connection with the related settlement of certain

Claims asserted by the objectors in the Chapter 11 Cases that was approved by the Court by

order entered on September 20, 2010 [Docket No. 5503].  The IRS Objection and the Texas

Objection are each addressed by paragraph 15 of this Order and have, accordingly, been

withdrawn.

The Court has further examined the entire record compiled in the Chapter 11

Cases and has considered the totality of the circumstances relevant to the commencement of the

cases and the formulation of the Plan.  The Court has further considered the offers of proof and

the arguments and representations of counsel at the Confirmation Hearing.  Based upon the

foregoing matters, due deliberation having been given to the transactions set forth in the Plan and

good cause appearing, the Court makes the following findings of fact, conclusions of law and order pursuant to Federal Rule of Civil Procedure 52(a), made applicable to this matter pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

## I.

### Findings of Fact and Conclusions of Law

**IT HAS BEEN DETERMINED BY THE COURT THAT:**

**A.** **Jurisdiction and Venue.**

On August 13, 2007, the Debtors filed Chapter 11 petitions under the Bankruptcy Code. This Court has jurisdiction over the Chapter 11 Cases and to confirm the Plan pursuant to 28 U.S.C. §§ 1334 and 157. The Confirmation Hearing is a core proceeding under 28 U.S.C. § 157(b)(2)(L) and venue of these cases in the District of Delaware is proper under 28 U.S.C. § 1408. The Debtors are authorized to continue to operate their businesses as debtors in possession pursuant to Section 1107 of the Bankruptcy Code and no trustee or examiner has been appointed in the Chapter 11 Cases. The Debtors qualify as proponents of the Plan pursuant to Section 1121 of the Bankruptcy Code.

**B.** **Approval of Disclosure Statement.**

On July 12, 2010, the Debtors filed their initial disclosure statement for the amended plan dated July 12, 2010. On August 13, 2010, after the Plan was filed, the Debtors filed the Disclosure Statement. A hearing to consider the adequacy of the Disclosure Statement was held on August 17, 2010. Pursuant to the Disclosure Statement Order, the Court approved the Disclosure Statement as containing "adequate information" pursuant to Section 1125 of the

Bankruptcy Code and authorized the Proponents to disseminate the Disclosure Statement to Creditors and other parties in interest.

**C.     Notice of Plan Proceedings.**

In accordance with the Disclosure Statement Order, on or about August 23, 2010, (and thereafter), the Debtors mailed the Plan, the Disclosure Statement, the Disclosure Statement Order, the Confirmation Hearing Notice, and the Ballots and related voting materials and instructions (collectively, the "Solicitation Package"), to all creditors and other parties in interest as provided by Bankruptcy Rules 2002, 3017, 3018 and 3019. The Plan and the Disclosure Statement comply with Bankruptcy Rule 3016(c). The proper and timely service of the Solicitation Packages is evidenced by the Proof of Plan Service and the Court finds such notice sufficient. The Disclosure Statement Order further required the Proponents to publish the Confirmation Hearing Notice in the national edition of *USA Today* by August 31, 2010. The timely publication of such notice is also evidenced by the Proof of Plan Service. The Court further finds that the Proponents have complied with the terms of the Disclosure Statement Order and that notice of the Confirmation Hearing was appropriate in the particular circumstances of the Chapter 11 Cases. Accordingly, the Court concludes that notice of the Confirmation Hearing and the proposed issuance of the injunction set forth in Section VII(F) of the Plan was due, proper, timely and adequate. The Proponents have complied in all material respects with Bankruptcy Rules 2002 and 3017 and the Disclosure Statement Order. All parties in interest have had an opportunity to appear and be heard at the Confirmation Hearing.

**D. Modification of Plan.**

Since the entry of the Disclosure Statement Order, the Proponents have modified the Plan as described in the (a) *Submission of Assumption Schedule* filed on September 23, 2010 (the "Assumption Schedule"), (b) *Submission of Reserved Avoidance Actions Schedule* filed on October 5, 2010, and (c) *Submission of Modifications to Second Amended Chapter 11 Plan of Aegis Mortgage Corporation, et al.*, filed on October 6, 2010. The foregoing modifications (collectively, the "Plan Modifications") are technical and do not materially adversely change the treatment of the Holders of Claims or Equity Interests under the Plan. Hence, the Plan Modifications comply with Sections 1125 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. The Plan, as modified by the Plan Modifications, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code and shall be the Plan confirmed at the Confirmation Hearing. The references in this Order to the Plan shall refer to the Plan as modified by the Plan Modifications.

**E. Voting on Plan.**

The Disclosure Statement Order fixed September 28, 2010, as the last day to vote to accept or reject the Plan. The Proponents have tabulated the Ballots accepting and rejecting the Plan in the Voting Summary. The Proponents have further disclosed the corrections made, if any, with respect to non-conforming Ballots. Moreover, it appears that the Debtors have properly tabulated and counted the EPD/Breach Claims in a manner consistent with the procedures set forth in the Disclosure Statement Order. On September 27, 2010, pursuant to the Disclosure Statement Order, the Proponents filed the *Submission of EPD/Claim Voting Amount*

*Schedule* (as subsequently amended on September 29, 2010, and October 7, 2010), listing the proposed EPD/Breach Claim Voting Amount (as defined in the Disclosure Statement Order) for each Holder of an EPD/Breach Claim that returned an EPD/Breach Claim Questionnaire by September 20, 2010. The EPD/Breach Claim for each other Creditor that voted on the Plan was temporarily allowed in the amount of $1.00. As set forth in the Voting Summary, the Holders of Claims and Equity Interests in Classes 1, 2, 3, 4, 5 and 11 under the Plan have accepted the Plan in both number and amount pursuant to Section 1126 of the Bankruptcy Code.

**F.      EPD/Breach Claims.**

The Disclosure Statement Order fixed September 28, 2010, as the last day for each Holder of an EPD/Breach Claim to file an EPD/Breach Claim Election reflecting the decision of such Holder to opt out of the EPD/Breach Claim Protocol and instead have its claim independently determined and allowed by order of the Bankruptcy Court (other than as provided for under the EPD/Breach Claim Protocol). It appears that the following Holders of EPD/Breach Claims have timely filed an EPD/Breach Claim Election: (a) Fannie Mae; and (b) Aurora Loan Services LLC, on behalf of itself, Lehman Brothers Holdings Inc., Aurora Bank FSB (f/k/a Lehman Brothers Bank, FSB) and certain trusts. All other Holders of EPD/Breach Claims are accordingly deemed, under the Plan, to be Holders of EPD/Breach Claims (Submitted). Pursuant to Section I(B)(92) of the Plan, the Debtors have determined, in consultation with the Committee, that the EPD/Breach Claim Protocol Conditions shall be deemed satisfied. On October 1, 2010, the Proponents filed the *Notice of Satisfaction of EPD/Breach Claim Protocol Conditions*. As a result, notwithstanding the filing of certain EPD/Breach Claim Elections, the

EPD/Breach Claims (Submitted) shall be treated in accordance with, and subject to the calculation and allowance procedures established by, the EPD/Breach Claim Protocol. The EPD/Breach Claims (Opt Out) shall be independently determined and allowed by order of the Bankruptcy Court or as otherwise permitted by the Claim resolution procedures under the Plan.

## G. **Compliance with Section 1129.**

The Plan complies with all of the requirements set forth in Section 1129 of the Bankruptcy Code, including the following:

### 1. **Plan Compliance--Section 1129(a)(1).**

The Plan complies with the applicable provisions of Sections 1122 and 1123 of the Bankruptcy Code.

#### a. Classification and Treatment

The Plan designates twelve separate Classes of Claims and Equity Interests. The Plan adequately and properly classifies all claims and interests required to be classified and thus satisfies the requirements of Sections 1122 and 1123(a)(1) of the Bankruptcy Code.

Section III(B) of the Plan specifies the impaired and unimpaired classes of Claims and Equity Interests under the Plan. Under the Plan, each of Classes 1 through 5 and 7 through 12 is impaired. Class 6 is not impaired under the Plan. Further, the Plan adequately specifies the treatment of each impaired Class of Claims and thus satisfies the requirements of Sections 1123(a)(2) and (3) of the Bankruptcy Code.

The Plan provides the same treatment for each Claim in a particular Class, unless the holder of a particular Claim agrees to less favorable treatment of such Claim. The Plan thus

8

satisfies the requirements of Section 1123(a)(4) of the Bankruptcy Code. No election for application of Section 1111(b)(2) of the Bankruptcy Code by any Class of secured creditors was made under Bankruptcy Rule 3014.

          b.      Means for Implementation

Article V of the Plan provides adequate means for implementation of the Plan by providing for the vesting of the Plan Assets in the Liquidating Debtors and the substantive consolidation of the Liquidating Debtors. The Plan further provides for three alternative treatment options for Aegis REIT. It appears that, by the *Notice of Aegis REIT Treatment Election* filed by the Proponents on September 16, 2010, the Debtors have selected the Aegis REIT Disposition option for Aegis REIT. Accordingly, Article V(B)(1) governs the means for the implementation of the Plan with respect to Aegis REIT. Sections V(C), (D), (E) and (F) of the Plan provide, pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code, for the implementation of certain Subordination Rights and settlements in favor of certain Creditors and the corresponding re-allocation of certain Distributions to be made to Madeleine under the Plan. Sections V(A) and V(B)(1) of the Plan provide, pursuant to Sections 1123(a)(5)(A) and (B) of the Bankruptcy Code, for the vesting in the Liquidating Debtors of all right, title and interest in the Plan Assets, and for the transfer of the Aegis REIT Assets Remainder to the Liquidating Debtors, for distribution to Creditors at the times, in the amounts and according to the treatment provisions of the Plan. The Plan thus contains adequate means for its implementation and satisfies the requirements of Section 1123(a)(5) of the Bankruptcy Code.

c.        Charter Amendment

The Plan, at Section X(P), provides that the Charter of each of the Liquidating Debtors and Reorganized Aegis REIT shall be deemed amended to prohibit the issuance by the Debtors of nonvoting securities. The Plan thus satisfies the requirements of Section 1123(a)(6) of the Bankruptcy Code.

d.        Officers, Directors and Trustees

Section 1123(a)(7) of the Bankruptcy Code requires that the manner of selection of any director, officer or trustee under the Plan, or any successor to such officer, director or trustee, be consistent with the interests of creditors and equity security holders and with public policy. The Debtors have, pursuant to the *Notice of Selection of Responsible Officer*, filed by the Proponents on October 8, 2010 (as amended on October 12, 2010, the "Responsible Officer Notice"), disclosed the identity and affiliations of the person who will serve, following the Effective Date, as the Responsible Officer of the Liquidating Debtors and Reorganized Aegis REIT. The appointment of such individual is consistent with the interests of creditors and with public policy. Accordingly, the Plan satisfies Section 1123(a)(7) of the Bankruptcy Code.

e.        Other Provisions

The Plan contains other provisions for implementation that are reasonable and otherwise consistent with Section 1123(b) of the Bankruptcy Code.

f.        Limitations of Liability

The exculpation and release provisions of Sections VIII(D)(1) and (2) of the Plan are reasonable and appropriate. The exculpation in Section VIII(D)(1) is reasonably limited in

scope to prevent the assertion of liability for actions taken in connection with the Chapter 11 Cases, administering the cases and proposing the Plan during the period following the Petition Date and prior to the Effective Date of the Plan. The releases in Sections VIII(D)(2) are customary and appropriate and permissible under applicable law.

### 2. Proponents' Compliance--Section 1129(a)(2).

The Proponents have complied with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. The Proponents solicited acceptances of the Plan in accordance with the requirements of the Disclosure Statement Order and in good faith, as that term is used in Section 1125(e) of the Bankruptcy Code. The Disclosure Statement contains adequate information, as that term is defined in Section 1125(a) of the Bankruptcy Code. The Ballots of holders of Claims entitled to vote on the Plan were properly solicited and tabulated. The Proponents have further complied with all the provisions of the Bankruptcy Code and the Bankruptcy Rules governing notice of the Confirmation Hearing, approval of the Disclosure Statement and all other matters considered by the Court in the Chapter 11 Cases. The record in the Chapter 11 Cases further discloses that the Debtors have attempted in good faith to comply with the orders of the Court entered during the pendency of the cases and that the Debtors have not violated any such orders.

### 3. Good Faith--Section 1129(a)(3).

The Plan has been proposed in good faith and not by any means forbidden by law. No creditor has filed an objection to confirmation of the Plan on the grounds that the Plan was not proposed in good faith or was proposed by any means forbidden by law. Accordingly,

pursuant to Bankruptcy Rule 3020(b)(2), the Court may conclude that the Plan complies with Section 1129(a)(4) of the Bankruptcy Code without receiving evidence on such issues. The Court has examined the totality of the circumstances surrounding the formulation of the Plan. The Chapter 11 Cases have been filed and prosecuted in good faith and consistent with the orders of the Court. The Plan is the product of cooperative efforts among the Debtors and the Committee. The settlements embedded in the Plan (in Sections V(C), (F) and VIII(D)(2)(b), among others) are fair and reasonable and have been negotiated at arms' length by parties represented by competent counsel. The Plan has been accepted by the holders of Claims in all Classes that voted on the Plan and such acceptance evidences the informed judgment of Creditors that the Plan is in their best interests. Therefore, the Court finds that the Plan has been proposed in good faith with the legitimate and honest purpose of reorganizing the debts of the Debtors.

### 4.    Plan Payments--Section 1129(a)(4).

All amounts to be paid by the Debtors for services or expenses in the Chapter 11 Cases have either been fully disclosed and approved as reasonable or, pursuant to the terms of the Plan, will be disclosed and subject to the approval of the Bankruptcy Court following Confirmation of the Plan. The Responsible Officer Notice adequately discloses the payments to be made to the Responsible Officer for services in connection with the Chapter 11 Cases following the Effective Date. The Court finds that such proposed compensation to the Responsible Officer is reasonable. Accordingly, the Plan satisfies the requirements of Section 1129(a)(4) of the Bankruptcy Code.

5. **Officer Affiliations--Section 1129(a)(5).**

Following the Effective Date, the Responsible Officer shall act as the representative of the Liquidating Debtors and Reorganized Aegis REIT to exercise the rights, power and authority of such entities under applicable nonbankruptcy law. The Plan and the Responsible Officer Notice disclose the identity, affiliations and the nature of the compensation for the Responsible Officer and it appears that he does not hold or represent an interest adverse to the Liquidating Debtors or Reorganized Aegis REIT. Accordingly, the Plan satisfies the requirements of Section 1129(a)(5) of the Bankruptcy Code.

6. **Rates--Section 1129(a)(6).**

There are no rate changes provided for in the Plan.

7. **Best Interests--Section 1129(a)(7).**

Section 1129(a)(7) of the Bankruptcy Code requires that each holder of a Claim or Equity Interest in an impaired Class under the Plan shall either accept the Plan or shall receive or retain property under the Plan equal to or greater than that which such holder would receive or retain in a liquidation under Chapter 7 of the Bankruptcy Code. As set forth in the Voting Summary, only one Creditor in Class 1 and nine Creditors in Class 3 have rejected the Plan; all other Holders of Claims and Equity Interests that voted have accepted the Plan. None of such rejecting Creditors has objected to confirmation on the basis that it would receive less under the Plan than in a Chapter 7 liquidation. Confirmation of the Plan nonetheless appears preferable to the liquidation of the Debtors under Chapter 7 of the Bankruptcy Code. The Disclosure Statement (including the Liquidation Analysis attached as **Exhibit 1** to the Disclosure Statement)

indicates that each Holder of an Allowed Claim will receive under the Plan property of a value not less than the amount such holder would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code. There can be no assurance that, if the Chapter 11 Cases were converted to cases under Chapter 7, the Debtors would be able to disburse the amounts projected under the Plan to Creditors. In particular, the *Memorandum of Understanding* dated as of June 15, 2009 (described in the Disclosure Statement) and the settlements contemplated therein are contingent upon confirmation of the Plan. The foregoing compromises would not be available if the cases were converted to Chapter 7. Moreover, a conversion of the cases to Chapter 7 would likely be accompanied by additional costs and further delay in the distribution of property of the estates, thereby diluting the amounts presently available for distribution to Creditors under the Plan. The Plan thus represents a reasonable effort by the Debtors that will likely provide a superior recovery to Creditors than conversion of the Chapter 11 Cases. Accordingly, the Plan is in the best interests of Creditors under Section 1129(a)(7) of the Bankruptcy Code.

8. **Acceptance/Cramdown--Sections 1129(a)(8) and 1129(b).**

a. Accepting Classes

Class 6 (Velazquez Claims) is unimpaired under the Plan. Accordingly, pursuant to Section 1126(f) of the Bankruptcy Code, Class 6 is deemed to have accepted the Plan, and solicitation of votes with respect to such Class is therefore not required.

Class 1 (Priority Claims), Class 2 (Secured Claims), Class 3 (Convenience Claims), Class 4 (Consolidated Debtors Unsecured Claims), Class 5 (Consolidated Debtors EPD/Breach Claims) and Class 11 (Aegis REIT Preferred Stock Equity Interests) are each

impaired under the Plan and have been given adequate opportunity to vote to accept or reject the Plan. As demonstrated in the Voting Summary, the Plan has been accepted, within the meaning of Section 1126(c) of the Bankruptcy Code, by the Holders of Claims in Classes 1, 2, 3, 4 and 5, and Equity Interests in Class 11

b.  Rejecting Classes

Class 9 (Intercompany Claims), Class 10 (Consolidated Debtors Common Stock Equity Interests), and Class 12 (Aegis REIT Common Stock Equity Interests) are each impaired under the Plan but the Holders of such Claims and Equity Interests will not receive or retain any property under the Plan on account of such Claims and Equity Interests. Accordingly, pursuant to Section 1126(g) of the Bankruptcy Code, Classes 9, 10 and 12 are each deemed to have rejected the Plan, and solicitation of votes with respect to such Classes is therefore not required.

Class 7 (Aegis REIT Unsecured Claims) and Class 8 (Aegis REIT EPD/Breach Claims) are also impaired under the Plan and have been given adequate opportunity to vote to accept or reject the Plan. It appears, however, that no Ballots were cast by any Holders of Claims in Classes 7 or 8 of the Plan.

Notwithstanding the deemed rejection of the Plan by the Holders of Claims and Equity Interests in Classes 9, 10 and 12, and the absence of votes by the Holders of Claims in Classes 7 and 8, the Debtors have requested confirmation of the Plan pursuant to Section 1129(b) of the Bankruptcy Code.

The treatment of Classes 7, 8 and 9 under the Plan satisfies Section 1129(b) of the Bankruptcy Code because the Plan does not discriminate unfairly, and is fair and equitable, with

respect to such Classes. No holder of any Claim or Equity Interest that is junior to the Claims in such Classes will receive or retain any property under the Plan (as a result of the Debtor's selection of the Aegis REIT Disposition option, all Aegis REIT Preferred Stock Equity Interests in Class 11 will be terminated pursuant to Section III(B)(11) of the Plan). Accordingly, the Plan satisfies the tests set forth in Section 1129(b)(2)(B) of the Bankruptcy Code with respect to Classes 7, 8 and 9 and may be confirmed over the rejection of the Plan by such Classes.

The treatment of Classes 10 and 12 under the Plan also satisfies Section 1129(b) of the Bankruptcy Code because the Plan does not discriminate unfairly, and is fair and equitable, with respect to such Classes. No holder of any Equity Interest that is junior to the Equity Interests in such Classes will receive or retain any property under the Plan. Moreover, the Aegis REIT Common Stock Equity Interests in Class 12 are solely held by the Debtors Aegis Mortgage Corporation, Aegis Correspondent Corporation and Aegis Lending Corporation, and such parties each consent to the treatment of the Class 12 Equity Interests under the Plan. Accordingly, the Plan satisfies the tests set forth in Section 1129(b)(2)(C) of the Bankruptcy Code with respect to Classes 10 and 12 and may be confirmed over the rejection of the Plan by such Classes.

### 9. Administrative Expenses and Priority Tax Claims--Section 1129(a)(9).

Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, Article II of the Plan provides that, as soon as practicable after the later of the Effective Date of the Plan or the date upon which the Bankruptcy Court allows a particular Administrative Claim or Priority Tax Claim, each holder of such a Claim will receive Cash equal

to the allowed amount of the Claim. Accordingly, the Plan complies with the requirements of Section 1129(a)(9) of the Bankruptcy Code.

### 10. Impaired Class Acceptance--Section 1129(a)(10).

According to the Voting Summary, at least one Class of Claims impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider of the Debtors.

### 11. Feasibility--Section 1129(a)(11).

The Court is satisfied that the Plan is feasible. The Plan provides that, following the Effective Date, the Liquidating Debtors and Reorganized Aegis REIT shall distribute the Plan Assets to Creditors according to the requirements of the Plan. The Debtors have estimated that, as of a projected Effective Date of November 1, 2010, the Debtors will have Available Cash on hand from the liquidation of Estate assets of approximately $25 million (without including the proceeds of certain tax refunds, among other retained assets). The Plan Assets, hence, are sufficient to meet the financial obligations of the Liquidating Debtors and Reorganized Aegis REIT under the Plan. It appears, thus, that confirmation of the Plan is not likely to be followed by the need for further financial restructuring. Accordingly, the Plan is feasible under Section 1129(a)(11) of the Bankruptcy Code.

### 12. Fees Payable Under 28 U.S.C. § 1930--Section 1129(a)(12).

Section V(AA) of the Plan provides for the payment of all fees payable under Section 1930 of title 28 of the United States Code as soon as practicable following the Effective Date of the Plan, to the extent not previously paid by the Debtors during the Chapter 11 Cases.

### 13. Retiree Benefits--Section 1129(a)(13).

The Debtors are not obligated to provide "retiree benefits" within the meaning of Section 1114(a) of the Bankruptcy Code.

### 14. Other--Sections 1129(a)(14), (15) and (16).

Sections 1129(a)(14), (15) and (16) of the Bankruptcy Code are not applicable to the Debtors.

## H. Injunction, Exculpation and Releases.

The injunction set forth in Section VIII(F) of the Plan will be issued in connection with Confirmation of the Plan. The Court has jurisdiction to enter the injunction pursuant to 28 U.S.C. §§ 1334(a), (b) and (d). Section 105(a) of the Bankruptcy Code permits the approval and entry of the injunction, especially where, as here, such injunction is material to the implementation of the Plan as provided in Section 1123(a)(5) of the Bankruptcy Code, is in the best interests of holders of Claims against the Debtors, and otherwise complies with the requirements of the Bankruptcy Code and the Bankruptcy Rules.

The exculpation provisions of Section VIII(D)(1) of the Plan are consistent with Section 1125 of the Bankruptcy Code and will not relieve any party of liability for an act or omission to the extent determined to have constituted willful misconduct or gross negligence.

The releases set forth in Sections III(D)(2)(a) of the Plan are consistent with Section 1123(b)(3) of the Bankruptcy Code and are reasonable and appropriate in the particular circumstances of the Chapter 11 Cases. These releases will not relieve any of the Agents of the Debtors, the Liquidating Debtors, Reorganized Aegis REIT from any Litigation or potential

Litigation arising out of the willful misconduct or gross negligence of any such Agents in connection with, related to, or arising out of the Chapter 11 Cases.

The releases set forth in Sections III(D)(2)(c) of the Plan are also consistent with Section 1123(b)(3) of the Bankruptcy Code and are reasonable and appropriate in the particular circumstances of the Chapter 11 Cases. These releases are consensual and apply to each Entity that affirmatively votes to accept the Plan.

The releases set forth in Section VIII(D)(2)(b) of the Plan are supported by adequate consideration and, pursuant to Section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, are fair, reasonable and in the best interests of the Debtors, the Liquidating Debtors, Reorganized Aegis REIT and Creditors. The releases are an integral component to the formulation and expeditious implementation of the Plan, particularly the allowance and treatment under the Plan of certain Claims of CSFB, UBS and Madeleine (pursuant to Sections II(E), III(B)(4)(d) and III(B)(5)(f) of the Plan), and the resolution of certain Subordination Rights asserted by CSFB and UBS against Madeleine (pursuant to Section V(C) of the Plan).

Accordingly, based upon the record of the Chapter 11 Cases, the injunction and limitations of liability set forth in Sections VIII(D) and (F) of the Plan are approved.

I. **Assumption and Rejection--Section 1123(b)(2).**

Section VI of the Plan provides for the assumption, as of the Effective Date, of all executory contracts and unexpired leases of the Debtors that are expressly identified on the Assumption Schedule to the Plan. There are no outstanding assumption obligations with respect

to such identified executory contracts and unexpired leases. Section VI of the Plan further provides for the rejection, as of the Effective Date, of all other executory contracts and unexpired leases of the Debtors that are not specified under Section VI of the Plan. The Court finds that the Debtors have exercised reasonable business judgment in making the decision to assume or reject the executory contracts and unexpired leases under the Plan.

**J.**     **Conditions to Confirmation.**

It appears that the conditions to confirmation contained in Section VII(A) of the Plan will be satisfied. Moreover, it appears that the conditions precedent to the effectiveness of the Plan, as set forth in Section VII(C), are also likely to be satisfied. The closing of the Aegis REIT Sale Agreement occurred on October 6, 2010.

**K.**     **Safe Harbor.**

The Proponents (and their respective officers, directors, shareholders, attorneys, agents, advisers and employees) have solicited acceptances or rejections of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and, accordingly, are not liable, on account of such solicitation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

**L.**     **Retention of Jurisdiction.**

The Bankruptcy Court, as provided in Article IX of the Plan and pursuant to Section 1142 of the Bankruptcy Code and Bankruptcy Rule 3020(d), may properly retain jurisdiction over the matters set forth therein and in this Order.

**M.    Other.**

　　　　　To the extent that any portion of a finding of fact contains or constitutes a conclusion of law, such portion shall be deemed a conclusion of law and is hereby adopted as such.  To the extent that any portion of a conclusion of law contains or constitutes a finding of fact, such portion shall be deemed a finding of fact and is hereby adopted as such.

**II.**

**Order Confirming Plan**

　　　　　Based on the record of the Confirmation Hearing, all the proceedings held before the Court in the Chapter 11 Cases, and the foregoing findings of fact and conclusions of law,

**IT IS HEREBY ORDERED THAT:**

**1.    Plan Confirmed.**

　　　　　The Plan, as modified by the Plan Modifications, is confirmed.  The Proponents have adduced adequate and sufficient evidence that the Plan complies with the applicable provisions of the Bankruptcy Code.  The Plan satisfies all the requirements for confirmation established under Section 1129 of the Bankruptcy Code.  Any objections to confirmation of the Plan, or to the adequacy of the Disclosure Statement, unless previously withdrawn, are overruled.  The Debtors are authorized to (a) take such actions as may be necessary or appropriate to carry out the Plan, and (b) execute such documents and instruments as may be required to implement the Plan.  The Debtors, the Liquidating Debtors, and Reorganized Aegis REIT, and any other entity designated pursuant to the Plan, are authorized, empowered and directed to execute, deliver, file and record any document, and to take any action necessary or

appropriate to implement, consummate and otherwise effect the Plan in accordance with its terms in all material respects, and all such entities shall be bound by the terms and provisions of all documents executed and delivered by them that are necessary or appropriate to effectuate the transactions contemplated by the Plan.

## 2. Confirmed Plan Binding.

Pursuant to Section 1141(a) of the Bankruptcy Code, upon the Effective Date, the provisions of the Plan shall bind (a) the Debtors, the Liquidating Debtors and Reorganized Aegis REIT, and (b) any Creditor of the Debtors and any holder of any Equity Interests in the Debtors, whether or not (i) such Creditor or holder has filed a proof of Claim or interest or is deemed to have filed a proof of Claim or interest under Sections 501 or 1111 of the Bankruptcy Code, (ii) the Claim or interest of such Creditor or holder is allowed under Section 502 of the Bankruptcy Code, (iii) such Creditor or holder has accepted the Plan, or (iv) such Creditor or holder is impaired under the Plan.

## 3. Revesting of Property of Estates.

Pursuant to Section 1141(b) of the Bankruptcy Code, upon the Effective Date, title to all Plan Assets (including any Aegis REIT Assets Remainder) shall vest in the Liquidating Debtors for the purposes contemplated under the Plan and shall no longer constitute property of the Estates created for the Debtors in their respective Chapter 11 Cases. Pursuant to Section 1141(c) of the Bankruptcy Code, upon the Effective Date, all property dealt with by the Plan shall vest in the Liquidating Debtors free and clear of all Claims and Equity Interests, including Liens, charges or other encumbrances of Creditors. Following the Effective Date, the

Liquidating Debtors may use, acquire and dispose of the Plan Assets without supervision by the

Bankruptcy Court, without further approval of the Bankruptcy Court or notice to Creditors, and

free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules, but consistent with

the terms of the Plan. The Plan Assets shall be held by the Liquidating Debtors in trust for

Creditors and to meet the obligations under the Plan, and shall be distributed or used exclusively

in accordance with the Plan.

**4. Means of Implementation Approved.**

The Debtors are authorized to take all actions necessary or appropriate to

implement, effectuate and consummate the Plan in accordance with its terms.

a. *Substantive Consolidation.*

Upon the Effective Date, the Estates of the Consolidated Debtors shall be

substantively consolidated for purposes of carrying out the Plan, including making distributions

under the Plan. Accordingly, (a) no Distributions will be made under the Plan on account of the

Intercompany Claims among the Consolidated Debtors; (b) the guarantees of the Consolidated

Debtors will be deemed eliminated so that any Claim against the Consolidated Debtors and any

guarantee thereof executed by any Debtor and any joint and several liability of the Consolidated

Debtors with one another will be deemed to be one obligation of the Consolidated Debtors; (c)

each and every Claim against the Consolidated Debtors will be deemed asserted as a single

Claim against the Liquidating Debtors as a whole, and will be treated in the same Class

regardless of the Consolidated Debtor; (d) all of the property of the Estates of the Consolidated

Debtors that is vested in the Liquidating Debtors shall be pooled in the Plan Assets to satisfy the

Claims against the Consolidated Debtors in the amounts and at the times set forth in the Plan;

and (e) any co-Debtor Claims in Classes 7 and 8 of the Plan (*i.e.*, any Claim against Aegis REIT

that is also a liability of any of the Consolidated Debtors) that are deemed included in Classes 4

and 5 of the Plan, respectively, shall be treated as if such claims were substantively consolidated

as a single Claim against the Liquidating Debtors.

        b.     *Appointment of Responsible Officer.*

The Responsible Officer is hereby appointed as the representative of the

Liquidating Debtors and Reorganized Aegis REIT to (a) exercise the rights, power and authority

of the Liquidating Debtors and Reorganized Aegis REIT under applicable provisions of the Plan

and bankruptcy and non-bankruptcy law, (b) retain professionals to represent the Liquidating

Debtors and Reorganized Aegis REIT in performing and implementing the Plan, (c) collect and

liquidate the Plan Assets and marshal the Plan Proceeds for the benefit of Creditors, (d)

prosecute the Litigation and otherwise attempt to realize upon the Plan Assets, (e) resolve

Disputed Claims and effectuate distributions to Creditors under the Plan, and (f) otherwise

implement the Plan, wind up the affairs of the Debtors and close the Chapter 11 Cases. The

compensation arrangements between the Liquidating Debtors and the Responsible Officer have

been disclosed, are reasonable and are hereby approved.

        c.     *Effectuation and Dissolution.*

The Responsible Officer is appointed by the Court as the representative of the

Liquidating Debtors and Reorganized Aegis REIT and may (i) execute a certificate of dissolution

for the Liquidating Debtors and Reorganized Aegis REIT pursuant to applicable non-bankruptcy

law, and (ii) take any necessary steps required to put into effect and carry out the Plan and

dissolve the Liquidating Debtors and Reorganized Aegis REIT at such time as the Liquidating

Debtors and Reorganized Aegis REIT have fully wound up their affairs in accordance with

applicable law pursuant to the provisions of the Plan (each with like effect as if exercised and

taken by unanimous action of the directors and stockholders of the Debtors).

d.      *Limitations of Liability.*

The exculpation and release provisions set forth in Section VIII(D) of the Plan are

fair, equitable and reasonable and, accordingly, are approved and authorized.

e.      *Charters.*

The Charters of the Liquidating Debtors and Reorganized Aegis REIT shall be

deemed amended as of the Effective Date to prohibit the issuance of nonvoting equity securities.

f.      *Compromise.*

The settlements set forth in Sections II(E), III(B)(4)(d), III(B)(5)(f), V(C) and

VIII(D)(2) of the Plan (among others), are approved and authorized pursuant to Section

1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019.

**5.      Tax Exemption.**

Pursuant to Section 1146(c) of the Bankruptcy Code, the making or delivery of an

instrument of transfer related to any property dealt with by the Plan shall not be taxed under any

law imposing a stamp tax or similar tax.

**6.      Injunction Against Enforcement of Pre-Confirmation Debt.**

*In implementation of the Plan, except as otherwise expressly provided in this*

*Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any*

*documents provided for or contemplated in the Plan, **all Entities who have held, hold or may***

*hold Claims against or Equity Interests in the Debtors or their Estates that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtors, the Liquidating Debtors, Reorganized Aegis REIT, the Estates, or any property of the Debtors or their Estates, with respect to any such Claim or Equity Interest; (b) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtors, the Liquidating Debtors, Reorganized Aegis REIT, the Estates, or any property of the Debtors, the Liquidating Debtors, Reorganized Aegis REIT, or the Estates, with respect to any such Claim or Equity Interest; (c) creating, perfecting or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtors, the Liquidating Debtors, Reorganized Aegis REIT, the Estates, or any property of the Debtors, the Liquidating Debtors, Reorganized Aegis REIT, or the Estates, with respect to any such Claim or Equity Interest; (d) asserting, directly or indirectly, any setoff or right of subrogation of any kind against any obligation due the Debtors, the Liquidating Debtors, Reorganized Aegis REIT, the Estates, or any property of the Debtors, the Liquidating Debtors, Reorganized Aegis REIT, or the Estates, with respect to any such Claim or Equity Interest; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Equity Interest.*

7.    **Assumption and Rejection Approved.**

As of the Effective Date, the rejection by the Debtors, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of all Executory Contracts (except for those agreements

specified in Section VI(A) of the Plan or listed in the Assumption Schedule), is approved and authorized. As of the Effective Date, the assumption by the Debtors, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the Executory Contracts and insurance policies listed in the Assumption Schedule, is approved and authorized.

**8.      Post-Confirmation Bar Dates.**

The following deadlines are hereby fixed for the actions described below. Any holder of a Claim of a kind described in this paragraph, for which a proof of Claim, motion or application (as the case may be) is not filed on or before the applicable date set forth below, shall not participate in any distribution under the Plan and shall be forever barred from asserting such Claim against the Debtors, the Liquidating Debtors or Reorganized Aegis REIT.

a.      *Administrative Claim Bar Date.*

Any entity asserting an Administrative Claim against any of the Debtors arising between January 2, 2008, through the Effective Date of the Plan, must file a request for payment pursuant to Section 503(a) of the Bankruptcy Code on or before the 60th day following the Effective Date of the Plan, or be forever barred from asserting such an Administrative Claim against the Debtors, the Liquidating Debtors or Reorganized Aegis REIT, or any property of the Debtors, the Liquidating Debtors or Reorganized Aegis REIT, and from sharing in any distributions under the Plan.

b.      *Professional Fee Claim Bar Date.*

Any Professional asserting a Professional Fee Claim under Sections 330, 331 or 503 of the Bankruptcy Code must file its application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date of the Plan on or

before the 60th day following the Effective Date of the Plan, or be forever barred from asserting a Professional Fee Claim against the Debtors, the Liquidating Debtors or Reorganized Aegis REIT, or any property of the Debtors, the Liquidating Debtors or Reorganized Aegis REIT, and from sharing in any distributions under the Plan.

c.     <em>Rejection Bar Date</em>.

Any Entity asserting a claim for damages arising from the rejection of an Executory Contract pursuant to Section VI(A) of the Plan, must file its Proof of Claim on or before the 30th day following the Effective Date of the Plan, or be forever barred from asserting such a claim against the Debtors, the Liquidating Debtors or Reorganized Aegis REIT, or any property of the Debtors, the Liquidating Debtors or Reorganized Aegis REIT, and from sharing in any distributions under the Plan.

**9.     Entry of Confirmation Order and Notice of Effective Date.**

As soon as practicable after the Effective Date, the Liquidating Debtors shall file and mail a notice of entry of this Order to all parties entitled to notice pursuant to Bankruptcy Rules 2002(f) and 3020(c). The notice shall further identify the Effective Date and shall set forth the injunction and any deadlines that may be established under the Plan or this Order.

**10.     Retention of Jurisdiction.**

The Court shall retain jurisdiction over the Chapter 11 Cases and all matters arising out of or related to the Chapter 11 Cases to the fullest extent permissible under (i) Sections 105(a) and 1142 of the Bankruptcy Code, (ii) Bankruptcy Rule 3020(d), and (iii) Article

IX of the Plan, and as otherwise necessary or useful to aid in the confirmation and consummation of the Plan.

**11.    United States Trustee Fees and Reports.**

All fees payable under 28 U.S.C. § 1930(a)(6) shall be paid by the Debtors in the amounts and at the times such fees may become due up to and including the Effective Date. Thereafter, the Liquidating Debtors shall pay all fees payable under 28 U.S.C. § 1930(a)(6) until the Chapter 11 Cases are closed, dismissed or converted.

**12.    Role of Committee.**

On the Effective Date, the Committee shall be dissolved and the members of the Committee shall be released and discharged from any further authority, duties, responsibilities, liabilities and obligations related to, or arising from, the Chapter 11 Cases, except that the Committee shall continue in existence for the purpose of filing, and shall remain authorized and empowered to take any actions related to, applications for the allowance of Professional Fee Claims incurred through the Effective Date.

**13.    Disbursing Agent.**

The Liquidating Debtors will act as the Disbursing Agent under the Plan. All Plan Expenses may be paid by the Disbursing Agent from the Claims Reserve Account without further notice to Creditors or approval of the Bankruptcy Court.

**14.    Liquidating Debtors Appointed As Estate Representative.**

The Liquidating Debtors are appointed as the representative of the Debtors under Section 1123(b)(3)(B) of the Bankruptcy Code to enforce, manage, settle, transfer or otherwise

dispose of all Litigation (Consolidated Debtors) and Litigation (Aegis REIT), with the exception

of any Avoidance Actions that are *not* Reserved Avoidance Actions, each of which shall be

deemed waived and released by the Debtors and their Estates upon the Effective Date, without

further notice to Creditors or approval of the Bankruptcy Court.

**15.    Specific Creditor Provisions.**

Notwithstanding any provision to the contrary, nothing in the Plan or this Order,

(1) shall affect the rights of the United States, including the Internal Revenue Service (IRS), to

assert setoff and recoupment, or (2) shall prevent the IRS from seeking, pursuant to applicable

nonbankruptcy law, to assess or collect from any non-debtor person or entity that may be liable

directly or indirectly for the Debtors' taxes, including but not limited to liability under 26 U.S.C.

§ 6672. The IRS may assert, as a component of an Allowed Administrative Claim, any

applicable underpayment interest and/or penalties computed in accordance with applicable

nonbankruptcy law. The Debtors acknowledge that the IRS holds Allowed Priority Tax Claims

in the aggregate amount of $663.87.

Notwithstanding any provision to the contrary, nothing in the Plan or this Order

shall require Dallas County or Harris County, Texas, to file a request for payment of an

Administrative Claim for 2010 taxes incurred by the Estates in the ordinary course of the

Debtors' business.

16. **Waiver of Stays.**

The stays under Bankruptcy Rule 3020(e) and, to the extent applicable, Bankruptcy Rule 6004(h), are hereby waived and this Order shall be effective and enforceable immediately upon its entry.

17. **Construction of Order.**

The failure to reference a particular provision of the Plan in this Order shall not affect the validity or enforceability of such provision. Each provision of the Plan shall be deemed authorized and approved by this Order and shall have the same binding effect of every other provision of the Plan, whether or not mentioned in this Order.

Dated: October 20, 2010

Honorable Brendan L. Shannon
United States Bankruptcy Judge

00233-001\DOCS_DE:164632.1